**Case No. 25-30324**

---

# In The
# United States Court of Appeals
# For The Fifth Circuit

---

**UNITED STATES OF AMERICA,**
**Plaintiff - Appellee**

**v.**

**CURTIS SQUIRE,**
**Defendant - Appellant**

---

**Appeal From The United States District Court**
**For The Eastern District Of Louisiana**

**Honorable Wendy B. Vitter, District Judge**
**Criminal Docket No. 24-41, Section "D"**

---

# BRIEF OF APPELLEE, THE UNITED STATES OF AMERICA

---

**MICHAEL M. SIMPSON**
**ACTING UNITED STATES ATTORNEY**
**EASTERN DISTRICT OF LOUISIANA**

**KEVIN G. BOITMANN**
**Assistant U.S. Attorney, Chief of Appeals**

**PATRICK BARR**
**Assistant U.S. Attorney**
**650 Poydras Street, Suite 1600**
**New Orleans, Louisiana 70130**
**(504) 680-3029**
**Attorneys for the United States of America**

**December 18, 2025**

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a)(2)(C), the government submits that oral argument is not required. The facts and legal arguments are adequately presented in the briefs and record, and this Court's decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ........................................... ii

TABLE OF CONTENTS........................................................................... iii

TABLE OF AUTHORITIES ...................................................................... iv

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES..............................................................................1

STATEMENT OF THE CASE.................................................................................1

SUMMARY OF ARGUMENT ..............................................................................7

ARGUMENT ..........................................................................................................8

I. 18 U.S.C. § 922(g)(1) is constitutional as applied to Curtis Squire's conviction under *Bruen, Rahimi, Diaz,* and *Kimble*. (Squire's Issues I and II). ........................................................8
   A. Standard of review. ...................................................................8
   B. Squire's past convictions allow for him to be permanently disarmed. ............................................................9
      1. Permanently disarming Squire for his theft related conviction is constitutional. ............................................9
      2. Squire's drug-trafficking offenses justify permanently prohibiting him from possessing a firearm. ..............................................................13
   C. Disarming Squire in his home is consistent with the history and tradition of the nation... ........................................15
   D. The district court did not err, but if it did, any error is rendered moot by this Court's de novo review.........................19
II. 18 U.S.C. § 922(g)(1) is not unconstitutionally vague. ......................22
   A. Standard of review. .........................................................................22
   B. Squire received fair notice that his possession of a firearm was unlawful. ...........................................................22
III. The remainder of Squier's challenges are foreclosed. [Squire Issues IV and V]. ..................................................................24

CONCLUSION ........................................................................................................25

CERTIFICATE OF SERVICE AND ECF COMPLIANCE ..................................26

# TABLE OF AUTHORITIES

## Cases

*Columbia Nat. Ress., Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995) ....................24

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................... passim

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ....................22

*Kolender v. Lawson*, 461 U.S. 352 (1983)....................24

*New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).................... passim

*Perrin v. United States*, 444 U.S. 37 (1979) ....................19

*Taylor v. United States*, 495 U.S. 575 (1990)....................12

*United States v. Alexis*, 2025 WL 3124475 (5th Cir. Nov. 7, 2025) ....................15

*United States v. Branson*, 139 F.4th 475 (5th Cir. 2025) .................... 22, 23, 24

*United States v. Clark*, 582 F.3d 607 (5th Cir. 2009).................... 8, 22, 23

*United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) .................... passim

*United States v. Gray*, 96 F.3d 769 (5th Cir. 1996).................... 22, 23

*United States v. Jubert*, 139 F.4th 484 (5th Cir. 2025).................... 14, 20

*United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025) .................... passim

*United States v. Rahimi*, 602 U.S. 680 (2024).................... passim

*United States v. Schnur*, 132 F.4th 863 (5th Cir. 2025).................... passim

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982).................... 22, 23

## Statutes

18 U.S.C. § 922(g)(1).................... passim

18 U.S.C. § 922(g)(8)....................16

18 U.S.C. § 924 ........ 15

18 U.S.C. § 3231 ........ 1

18 U.S.C. § 3742 ........ 1

28 U.S.C. § 1291 ........ 1

La. R.S. 14:62(A) ........ 12

**Rules**

Fed. R. App. P. 34(a)(2)(C) ........ ii

**Other Authorities**

An Act for Constituting a Council of Safety (Oct. 11, 1777), 1777 N.J. Laws ch. 40, § 20 ........ 18

An Act to Amend an Act for Declaring What Crimes and Practices Against the State Shall Be Treason, 1777 N.C. Laws ch. 6, § 9 ........ 18

Lynn Marsella, *Something About Carry: Supreme Court Broadens the Scope of 18 U.S.C. 924(c)*, 89 J. Crim. L. & Criminology 973 (1999) ........ 15

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The district court had jurisdiction under 18 U.S.C. § 3231. This is an appeal from a final judgment of the United States District Court for the Eastern District of Louisiana in a criminal case.

## STATEMENT OF THE ISSUES

I. Whether 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Curtis Squire's possession of a firearm. [Squire Issues I and II].

II. Whether 18 U.S.C. § 922(g)(1) is unconstitutionally vague.

III. Whether 18 U.S.C. § 922(g)(1) is facially unconstitutional under the Second Amendment or the Commerce Clause. [Foreclosed Issues] [Squire Issues IV and V].

## STATEMENT OF THE CASE

Curtis Squire engaged in a crime spree in 2017. ROA.318–34. He began in February by using two different vehicles without authorization. ROA.334. In March, law enforcement observed Squire with a known wanted individual entering an apartment. ROA.318. Law enforcement then searched the apartment and found six firearms, heroin, and cocaine. ROA.318. The investigation also determined the car used to get to the apartment was stolen. ROA.319. Squire pleaded guilty to two counts of possession with the intent to distribute heroin, conspiracy to distribute

heroin, illegal carrying of a weapon with a controlled dangerous substance, conspiracy possession of a firearm with a controlled dangerous substance, obstruction of justice, conspiracy to obstruct justice, and conspiracy possession of over $500 of stolen things. ROA.318.

Also in March 2017, Squire arrived at the mother of his child's house unannounced and followed her and their son into the bedroom where he proceeded to throw the mother to the floor, straddle her, and punch her in the forehead. ROA.319. At the time Squire was under a protective order not to contact the victim. ROA.319. He ultimately pleaded guilty to domestic abuse battery, domestic abuse child endangerment, and violating a protection order. ROA.319.

Squire concluded his spree in April when he burglarized a vehicle. ROA.334. He pleaded guilty to two counts of unauthorized use of a motor vehicle and one count of simple burglary. ROA.334. For his 2017 crimes, Squire was sentenced to four years imprisonment of which he served roughly two years before being released to parole supervision. ROA.318.

In February 2024, a large fight occurred in New Orleans's Ninth Ward culminating in two men firing 98 rounds into a crowd and injuring several people.

ROA.11, 284. A witness identified Squire as one of the shooters.[1] ROA.284. In response to this identification, New Orleans Police Department (NOPD) officers executed an arrest warrant on Squire at his residence. ROA.166, 315. When they arrived Squire, a female, and three children were present. ROA.166, 315. NOPD then executed a search warrant on the residence. ROA.166, 315. During that search police discovered a loaded Glock model 23C .40 caliber pistol with a high-capacity magazine containing 20 live rounds hidden under the oven. ROA.166.

Squire was indicted on a single count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(8). ROA.36. Squire moved to dismiss the indictment as unconstitutional as applied to him and unconstitutionally vague, among other arguments. ROA.66. He argued that the disarmament of a citizen in their own home, regardless of their felon status, is inconsistent "with the principles that underpin [the nation's] regulatory tradition." ROA.71. Citing the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), Squire contended the "core protection" of the Second Amendment was the right to keep arms in the home for the purpose of self-defense. ROA.84. He posited that the government would be unable to "point to relevantly similar historical laws that

[1] That witness would later recant her identification of Squire after his arrest and the search of his home. ROA.330. He did not challenge the warrant or search below nor does he here. ROA.66–93; Squire Br. 13–62.

justify prohibiting firearm possession in the home" to meet the burden for disarmament outlined in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). ROA.87. Squire also challenged the indictment claiming he did not receive fair notice of what conduct is prohibited. ROA.87. He argued that post-*Bruen* the "piecemeal approach" used by Circuit Courts creates an uncertainty as only some subsets of felons are disarmed. ROA.88. He contended this confusion renders the statute unconstitutionally vague under the Fifth Amendment. ROA.88–89.

The government opposed the motion to dismiss relying on Supreme Court and Fifth Circuit precedent. ROA.100–113. The government noted that both *Heller* and *Bruen* suggested that § 922(g)(1) remained constitutional. ROA.101. The government also argued the Supreme Court's decision in *United States v. Rahimi*, 602 U.S. 680 (2024), "left open the possibility that the government may prohibit gun possession by categories of persons thought by a legislature to present a special danger of misuse [of a firearm]." ROA.101–02. To that end, the government argued that disarming Squire based on conviction for burglary was analogous to the disarmament for theft analyzed and deemed constitutional by the Fifth Circuit in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024). ROA.103–06. The government reasoned that the *Diaz* logic extended the "going armed" laws, which sought to punish "those whose conduct disrupted the public order" and "led

almost necessarily to violence" analyzed in the § 922(g)(8) context in *Rahimi*, were applicable to § 922(g)(1) as well. ROA.103–04. Finally, the government contended that Squire's drug trafficking offenses were inextricably tied to violence. ROA.106–08. As such, disarming drug dealers is consistent with the nation's history and tradition of punishing violent criminals via "going armed" laws.[2] ROA.108–09.

The government also addressed Squire's claim that the possession of a firearm in the home required a different analysis. ROA.110–11. It highlighted that the *Heller* decision was premised on an assumption that "Heller is not disqualified from the exercise of Second Amendment rights." ROA.110. The government asserted that Squire's position likewise had no support from *Bruen* and *Rahimi.* ROA.110. Finally, the government responded to the vagueness challenge and argued that the statute must be in the light of the facts of Squire's case. ROA.111. That examination showed the "prohibited conduct is clearly defined with sufficient definiteness." ROA.111. Squire replied to the government's opposition in writing, addressing *Diaz* which had been decided after the filing of his motion to dismiss. ROA.118–35.

[2] After Squire's conviction this Court released *United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025), adopting this argument for validly disarming drug traffickers.

The district court denied Squire's motion. ROA.156. In relevant part, the district court ruled that "Defendant fail[ed] to establish that § 922(g)(1) …violates the Second Amendment … as applied based on the test set forth by the Supreme Court in *Bruen*." ROA.150. The ruling relied on *Diaz*'s determination that theft "would have historically led to capital punishment or estate forfeiture" and thus disarmament for that offense "fits within this tradition of serious and permanent punishment." ROA.151. The district court ruled that "Squire follows in Diaz's shoes" as their convictions were either the same or sufficiently similar to warrant the same historical analysis. ROA.152–53. Citing binding precedent and "and for the additional reasons set forth in the Government's Opposition brief," the district court determined the "challenge to § 922(g)(1) are without merit." ROA.153.

The district court also determined that Squire's vagueness challenged failed. ROA.155. It noted that "when a vagueness challenge does not involve First Amendment freedoms, [courts] examine the statute only in light of the facts of the case at hand." ROA.111. The ruling characterized Squire's argument as a misunderstanding of the law "because it challenges a Supreme Court ruling or rulings by other courts as vague instead of the law itself." ROA.154. The district court ruled "[a] plain reading of the statute supports this finding and provides sufficient notice to ordinary people of the conduct that is prohibited" and "it is

unclear how [Squire] was not given fair notice that his conduct was prohibited when many courts still consider §922(g)(1) constitutional." ROA.155.

Squire pleaded guilty to the violation of § 922(g)(1). ROA.238–39. Squire's guideline range was imprisonment of 46 to 57 months and supervised release for 1 to 3 years. ROA.256. The district court sentenced Squire to 52 month's imprisonment followed by 3 years of supervised release. ROA.272. Squire timely filed a notice of appeal. ROA.207.

## **SUMMARY OF ARGUMENT**

Curtis Squire's conviction for a violation of 18 U.S.C. § 922(g)(1) is consistent with the principles underpinning our nation's historical tradition of firearm regulation. This Court has already determined that his convictions for drug trafficking and burglary warrant the permanent and total disarming of Squire. There is no distinction made in binding precedent or historical tradition between the public or private prohibition against a qualifying felon possessing a firearm. The fact that the firearm was discovered in Squire's home does not change the constitutionality of his conviction.

Section 922(g)(1) is not unconstitutionally vague. The statute clearly demonstrates what conduct is prohibited, possessing a gun after a felony conviction. Squire was aware that his conduct was illegal and thus the statute was not vague in his case. Contrary to his claim, subsequent judicial interpretation does

not render the statute vague. Squire's remaining challenges to his conviction are foreclosed.

## ARGUMENT

### I. 18 U.S.C. § 922(g)(1) is constitutional as applied to Curtis Squire's conviction under *Bruen, Rahimi, Diaz,* and *Kimble*. (Squire's Issues I and II).

Squire challenges his conviction for a violation of 18 U.S.C. § 922(g)(1) under *Bruen*, 597 U.S. 1, in two ways. First, he claims his prior convictions do not justify permanent disarming as the government did not show a sufficient historical tradition of such a punishment for the crimes. Squire Br. 44–51. These arguments are foreclosed by this Court's precedent in *Diaz*, 116 F.4th at 458 (theft), *United States v. Schnur*, 132 F.4th 863, 869 (5th Cir. 2025)) (burglary), and *Kimble,* 142 F.4th at 317 (drug-trafficking). In those cases, this Court affirmed convictions based on predicate offenses identical, or nearly identical, to those in this case. Second, Squire claims that because the firearm was found in his home, and there is no historical tradition of prohibiting criminals from possessing weapons in their home for protection, his conviction is unconstitutional. Squire Br. 13–44. That contention is inconsistent with both the historical tradition and precedent.

#### A. Standard of review.

Preserved challenges to the constitutionality of a criminal statute are reviewed de novo. *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009).

### B. Squire's past convictions allow for him to be permanently disarmed.

Squire's convictions for burglary, possession of stolen things, unauthorized use of a vehicle, and possession with the intent to distribute narcotics qualify for permanent disarmament under 18 U.S.C. § 922(g)(1). In *Bruen* the Supreme Court adopted a two-part analysis that focuses entirely on the Second Amendment's text, as informed by "historical tradition," with a special emphasis on how gun ownership rights were viewed at the time of the founding. 597 U.S. at 24. First, a defendant must show that the conduct being regulated falls under the Second Amendment. *Id.* If shown, the government then must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* "This historical inquiry that courts must conduct will often involve reasoning by analogy." *Id.* at 29. However, the historical analogy need not be a "historical twin." *Id.* at 30. The district court was correct when it held that precedent doomed Squire's motion to dismiss. ROA.153.

#### 1. Permanently disarming Squire for his theft related conviction is constitutional.

Squire's as-applied challenge is foreclosed based on his theft related conviction by this Court's decisions in *Diaz,* 116 F.4th 458 and *Schnur,* 132 F.4th 863. Because both cases found that permanent disarmament for the offenses was

consistent with the nation's history and tradition, Squire's own as-applied challenge fails.

This Court first dealt with an as-applied challenge to § 922(g)(1) for theft related offenses in *Diaz*. Addressing *Bruen*'s "how and why" question for burdening a citizen's Second Amendment right, the Court noted that Diaz had a previous felony theft conviction and that numerous colonial-era laws "severely punish[ed] people like Diaz who had been convicted of theft," often with death. *See id*. at 468–69. In deciding the "why" question, the Court stressed that these capital punishment laws had a purpose "relatively similar" to § 922(g)(1)'s, to "deter violence and lawlessness." *Id.* at 469. *Diaz*'s historical survey highlighted that founding era laws also answered the "how" question by permanent disarmament, which is not "beyond what was done at the founding" to punish thieves. *Id.* Therefore, the disarmament of thieves "fits within this tradition of serious and permanent punishment." *Id.* at 470.

In *Schnur* this Court applied the *Diaz* reasoning to prior convictions for the theft-related offenses of robbery and burglary.[3] *Schnur,* 132 F.4th at 870–71. *Schnur* correctly concluded that the "several colonial-era laws targeting theft and punishing it as a felony offense" would apply to burglary and robbery as well. *Id.*

[3] The bulk of the *Schnur* decision focused on analysis of a prior aggravated battery conviction. 132 F.4th at 867–870.

at 870. It went on to note "[w]e held that these historical precursors established that 'our country has a historical tradition of severely punishing people…who have been convicted of theft.'" *Id.* (*quoting Diaz,* 116 F.4th at 468–69). It then concluded that burglary was a "theft-related felony" that fell within *Diaz*'s holding, and it determined the as-applied challenge based was foreclosed. *Id.* at 871. That same logic and reasoning applies to Squire's burglary conviction, foreclosing his argument.

Squire's attempt to distinguish his burglary and unauthorized use of a motor vehicle from the theft crimes discussed in *Diaz,* and more significantly *Schnur*, is unpersuasive. *See* Squire Br. 47–50. His demand that the requisite intent to permanently deprive the owner of the motor vehicle is necessary to compare his crime to those examined in *Diaz* and its progeny is inconsistent with *Bruen's* caveat that the crime analogy need not be a historical twin. *Bruen,* 597 U.S. at 30. There are enough similarities between Squire's crime, the carjacking committed by Diaz, and the thefts analyzed by the *Diaz* Court to demonstrate Squire's permanent disarmament is consistent with "what was done at the founding." *Diaz,* 116 F.4th at 469. Likewise, Squire's effort to distinguish his burglary conviction from the theft crimes discussed in *Schnur* and *Diaz* fails. Squire Br. 48–49. First, contrary to Squire's claim, the government did present historical analogies through an analysis of *Diaz* to the facts of this case. ROA.105–06 ("Squire has multiple predicate

felony convictions, importantly conspiracy to possess stolen things, simple burglary, and unauthorized use of a motor vehicle. Because these convictions are of a kind with the theft conviction that the *Diaz* decision analyzed, and deemed a sufficient predicate to disarm felons, this also forecloses Squire's as applied challenge.")

Second, as Squire notes "the contemporary understanding of 'burglary' has diverged a long way from its common law roots." *Taylor v. United States*, 495 U.S. 575, 593 (1990); Squire Br. 48. That shift in understanding does not help his argument, however, as an examination of founding era burglary is not needed. As *Schnur* states, and discussed above, modern burglary is a "theft-related felony conviction[]." 132 F.4th at 871. Indeed, the Louisiana burglary statue contemplates theft as a mechanism for committing the crime. La. R.S. 14:62(A). Squire attempts to distinguish his case from Schnur by imposing a fact-based inquiry into his prior conviction. Squire Br. 50. However, such an inquiry was not done with Schnur's prior burglary conviction, nor is it required here. *See Schnur,* 132 F.4th at 869–872 (examining the facts of the underlying aggravated battery charge, but not the facts of the underlying burglary charge); *see also Kimble*, 142 F.4th at 318 (rejecting an individualized factual assessment of dangerousness as it relates to prior drug-trafficking convictions and permanent disarming). Burglary is theft-related and thus *Diaz* and *Schnur* squarely apply to Squire's burglary conviction.

### 2. Squire's drug-trafficking offenses justify permanently prohibiting him from possessing a firearm.

Squire's three prior convictions related to the trafficking of heroin are enough to permanently disarm him. *See Kimble*, 142 F.4th at 317. Although *Kimble* was decided after Squire's motion was denied, the decision was rooted in the very arguments raised by the government at the district court. The government contended that disarming Squire based on his convictions for drug trafficking was consistent with the historical tradition of the nation. ROA.105–09. Relying on the "going armed" laws discussed in *Rahimi* and *Diaz*, the government argued that the violence tied to drug dealers fits them into the type of dangerous felons historically disarmed.[4] ROA.108–109. The government argued "similarly, like the 'going armed' laws discussed in *Rahimi* and *Diaz*, felony drug-trafficking statutes seek to diffuse the risk of violence that so often accompanies another crime." ROA.108.

This Court recently held § 922(g)(1)'s prohibition as applied to felons with predicate offenses of possession with intent to distribute narcotics and was

[4] Squire incorrectly attempts to limit the government to a part of its argument relating contraband. Squire Br. 48 n.15. While the government did present precedent on those analogies, which have since been rejected by *Kimble,* it also explicitly analogized to the "going armed" laws discussed in *Rahimi*, *Diaz,* and *Kimble.* ROA.108. Regardless, Squire has presented no authority for his claim that it would be "procedurally improper" for the government to present additional precedent to this Court not presented below. Squire Br. 48.

constitutional for the very reasons raised by the government.[5] *Kimble*, 142 F.4th at 317. As *Kimble* explained, the disarmament of drug dealers and traffickers is "consistent with *Bruen's* 'how' and 'why' tests" because drug dealers, like Squire, are "the sort of dangerous individual[s] that legislatures have long disarmed." *See id.* at 314–15. Furthermore, this Court rejected the need for "an individualized assessment that [the defendant] is dangerous" in making its determination. *Id.* at 318.

As *Kimble* notes, "our caselaw suggests that there are historical analogues demonstrating our Nation's longstanding tradition of disarming persons with a violent criminal history." *Id.* at 311 (quoting *Schnur*, 132 F.4th at 869). It further held "if a defendant's predicate felony involves…violence, his as-applied challenge to § 922(g)(1) will fail." *Id.* at 313. First, *Kimble* supported its holding by citing Supreme Court and circuit court precedent. *Id.* at 315–16. Second, this Court noted that legislative history and executive action likewise links drug dealing and trafficking to violence. *Id.* at 316–17. In 1986, Congress added drug trafficking

[5] The district court did not explicitly rule on this theory and the ruling pre-dated *Kimble*. ROA.144–56. However, the connection between drug trafficking and violence was cited by the government as a basis for prohibiting Squire's possession of a firearm. ROA.105–10. The district court did base its ruling, in part, on "the additional reasons set forth in the Government's Opposition brief." ROA.153. Further, this court may affirm on any basis supported by the record. *See United States v. Jubert*, 139 F.4th 484, 489 (5th Cir. 2025).

to § 922(g)(1) "to enhance the ability of law enforcement to fight violent crime and narcotics trafficking." *Id.* at 317. (quoting H.R. Rep. No. 99-495, at 1 (1986)). Similarly, "the White House requested that Congress 'amend the language of 18 U.S.C. § 924 to include drug crimes in light of the fact that criminals involved in drug trafficking may often carry or use firearms during the commission of drug-related felonies.'" *Id.* (quoting Lynn Marsella, *Something About Carry: Supreme Court Broadens the Scope of 18 U.S.C. 924(c)*, 89 J. Crim. L. & Criminology 973, 975 (1999)). As this Court summarized, "the Legislative, Executive, and Judicial Branches agree that drug trafficking is an inherently dangerous activity, and Congress has responded to that threat by disarming convicted drug traffickers via § 922(g)(1)." *Id.* Therefore, like Kimble, Squire's drug trafficking convictions fit neatly into the Nation's tradition of firearm regulation and independently support his disarmament. *See id.; see also Diaz*, 116 F.4th at 471; *United States v. Alexis*, No. 24-30811, 2025 WL 3124475, at *1 (5th Cir. Nov. 7, 2025) (per curium) (holding that Alexis's challenge of § 922(g)(1) fails due to his prior drug trafficking conviction).

### C. Disarming Squire in his home is consistent with the history and tradition of the nation.

Squire's claim that prohibiting a felon from possessing a firearm in their own home is unconstitutional is inconsistent with both precedent and the historical tradition and should be rejected. *Bruen* requires courts to examine the "who",

"how," and "why" of disarming a felon, but does not require an analysis of "where" the disarming applies. 597 U.S. at 29–33. In fact, neither the Supreme Court nor this Court have made distinctions between disarming a felon in public versus in his home. To the contrary the Supreme Court in *Rahimi* rejected a similar argument in the context of 18 U.S.C. § 922(g)(8). That is logical as the focus of inquiry is the felon.

In *Rahimi*, the Supreme Court analyzed a challenge like the one presented by Squire. Rahimi was under a temporary restraining order protecting his girlfriend which included disarming him for two years. *Rahimi*, 602 U.S. at 684. When doing a search of his home, law enforcement found a pistol, a rifle, and ammunition. *Id*. Rahimi challenged his conviction for a violation of § 922(g)(8) based on *Bruen* and *Heller*.

Rahimi argued *Heller* prevented disarmament "because Section 922(g)(8) bars individuals subject to restraining orders from possessing guns in the home, and in *Heller* [the Supreme Court] invalidated an 'absolute prohibition of handguns…in the home.'" *Id.* at 699 (quoting *Heller*, 554 U.S. at 636). However, "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home." *Id.* (quoting *Heller,* 554 U.S. at 626–27 n. 26.) To decide the matter, the Supreme Court then relied on the historical laws regulating the *public* carry of firearms and surety to uphold

§ 922(g)(8)'s application to Rahimi's *in-home possession*.[6] *Id.* at 688, 697-99. It further stated, "its prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent" and not the location of the possession. *Id.* at 698. The Supreme Court did not draw a line between public and private possession when a person is lawfully prohibited from possessing a firearm.

Like the Supreme Court, this Court has not made a distinction between the location of the possession, but rather focused on the person being prohibited from possessing. The logic of *Diaz* analogizing capital punishment and estate forfeiture laws to modern theft applies to this question as well. 116 F.4th at 469. As this Court noted "[c]apital punishment is obviously permanent, and the majority of the estate forfeiture laws … did not provide an opportunity for offenders to regain their possessions." *Id.* Compared to death and permanent estate forfeiture, which would include firearms, the "lesser restriction of permanent disarmament" whether in public or in the home, is permissible. *See id.* at 468–69. The logic and reasoning used by this Court in *Diaz* answers the question here as well —disarmament of Squire was permissible.

---

[6] Based on Rahimi's other offenses there is evidence to suggest he may have possessed at least one weapon outside his home. *Id.* at 687. However, his challenge was based on *Heller*'s invalidation of a prohibition against handguns in a home. *Id.* at 699

Likewise, the tradition of disarming those who posed a threat to public safety discussed in *Diaz* and confirmed in *Kimble* to include drug-dealers would apply to in-home possession. *See Diaz,* 116 F.4th at 471 (observing that "the government could prevent people who had committed crimes or were 'quarrelsome' from *accessing weapons*") (emphasis added); *id.* (observing that "going armed" laws "provide[d] for *permanent arms forfeiture*") (emphasis added). Similarly, founding era laws disarming loyalists, like those cited in *Kimble*, did not distinguish between prohibiting firearm possession in the home versus in public. 142 F.4th at 314–18 & nn.13, 15; *see, e.g.*, An Act for Constituting a Council of Safety (Oct. 11, 1777), 1777 N.J. Laws ch. 40, § 20, p. 90 (empowering council to "take from such Persons as they shall judge disaffected and dangerous to the present Government*, all the Arms*, Accoutrements and Ammunition which they own or possess") (emphasis added); An Act to Amend an Act for Declaring What Crimes and Practices Against the State Shall Be Treason, 1777 N.C. Laws ch. 6, § 9, p. 231 (any person refusing to take oath of allegiance "shall not keep guns or other arms within his or their house, but the same may be seized by a written order of a justice of the county in which he or they reside."). The historical laws demonstrate their application to both private and public possession. While not all the founding era laws were as explicit as North Carolina's, the phrases used, such as "permanent arms forfeiture," "accessing weapons," and "all the arms," do not

limit disarmament to only to public carrying. Indeed, to read the laws as drawing a line between public carrying and private keeping is antithetical to the plain and ordinary meaning of "permanent," "all," and "accessing." *See Perrin v. United States*, 444 U.S. 37, 42 (1979) (words not defined in statute should be given ordinary or common meaning). The rationale for disarming dangerous felons this Court relied on in *Kimble* applies equally here and permits prohibiting Squire from possessing a weapon anywhere.

Both precedent and the historical tradition show that disarmament applies to the felon's possession of the firearm and not the location of the weapon when seized. When a felon is deemed to be a danger to society, whether because of violence or thievery, he can be permanently and totally disarmed. *See Diaz*, 116 F.4th at 469; *Kimble,* 142 F.4th at 316–18. Just as capital punishment and estate forfeiture were not conditioned on location of the felon, the permanent disarmament of § 922(g)(1) applies to public and private possession. *Diaz*, 116 F.4th at 469. Squire's argument to the contrary fails.

**D. The district court did not err, but if it did, any error is rendered moot by this Court's de novo review.**

In addition to the as applied challenge to § 922(g)(1), Squire raises four alleged errors by the district court: (1) it erred "in not properly placing the burden [to show historical analogies] on the government," (2) it failed "to recognize that *Bruen* rendered prior Fifth Circuit precedent 'obsolete;'" (3) it misapplied *Diaz* and

its test; and (4) it determined that obstruction of justice was relatively similar to treason. Squire Br. 44–47. Addressing the first claim, the district court did not shift the burden of showing historical analogies, as it properly outlined that *Diaz* shifted the burden "to the Government to demonstrate that § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation" once the threshold showing was made. ROA.152. The district court then held that the government did so by analogizing Squire to Diaz and "additional reasons set forth in the government's opposition brief." ROA.151–52. That ruling shows the district court considered the analogies presented by the government and determined it met its burden. Then the district court correctly held Squire to his own burden: "to sustain a facial challenge, 'the challenger must establish that no set of circumstances exists under which the statute would be valid.'" ROA.152 (citing *Diaz*, 116 F.4th at 471–72). This was not error.

The last three alleged errors are rendered moot by this Court's de novo review. *See Jubert*, 139 F.4th at 489 (this court may affirm a judgment in a criminal case on any basis supported by the record). Regardless, the district court did not err. In a footnote, pursuant to *Diaz* and *Rahimi,* the district court rejected Squire's claim that *Bruen* "overruled prior Fifth Circuit precedent upholding § 922(g)(1)" and "categorically rendered all firearm statutes unconstitutional" considering *Diaz* and *Rahami*. ROA.150–51 n.31. That is not a misstatement of

law amounting to error, let alone reversible error. While *Bruen* abrogated some aspects of prior § 922(g)(1), such as the application of the means-end scrutiny, it did not render all firearm restrictions unconstitutional. 597 U.S. at 19–25. The district court correctly noted that *Diaz* and *Rahimi* support the notion that prior precedent is still relevant to the analysis.[7]

Additionally, as discussed above, the district court correctly applied *Bruen* and *Diaz* to determine that Squire's past convictions warranted permanent disarmament consistent with the nation's history and tradition. Finally, in a footnote, the district court correctly determined that because *Diaz* supported denial of Squire's motion it "need not address the multitude of other prior convictions and whether they, too, serve as support for firearm regulation." ROA.152–53 n.48. The district court went on to note that it found historical supporting disarmament based on a conviction for obstruction of justice as it was "relatively similar" to treason. ROA.152–53 n.48. That determination is academic as the district court was correct in its analysis of *Diaz* and likewise correct that the inquiry can end there. ROA.152. The discussion of footnote 48 is not reversible error.

[7] For instance, both *Rahimi*, 602 U.S. at 690–702 and *Diaz*, 116 F.4th at 463–72, have significant discussion and analysis of *Heller*, a pre-*Bruen* firearm regulation case.

## II. 18 U.S.C. § 922(g)(1) is not unconstitutionally vague.

### A. Standard of review.

Preserved challenges to the constitutionality of a criminal statute are reviewed de novo. *Clark*, 582 F.3d at 612.

### B. Squire received fair notice that his possession of a firearm was unlawful.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *United States v. Branson*, 139 F.4th 475, 478 (5th Cir. 2025) (citing *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). "A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* (internal quotations omitted). "The 'void-for-vagueness' doctrine requires that a *penal statute* define the criminal offense with sufficient definiteness that ordinary people can understand what *conduct* is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* (citing *United States v. Gray*, 96 F.3d 769, 776 (5th Cir. 1996)) (emphasis in original). "Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Id.* (citing *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S.

489, 495 n.7 (1982)). "As a threshold matter, [an appellant] must show that the statute is vague in his case ...." *Id.* (citing *United States v. Clark*, 582 F.3d 607, 614 (5th Cir. 2009).

Squire's claim that § 922 (g)(1) is unconstitutionally vague fails for reasons this Court already examined in *Branson*, which, though decided under a different standard of review, rejected a nearly identical challenge. In *Branson* this Court stated "§ 922 (g)(1) clearly defines the prohibited conduct—possessing a firearm as a felon." *Branson*, 139 F.4th at 479. *Branson* further held "§ 922 (g)(1) survives vagueness review because 'it define[s] the criminal offense with sufficient definiteness that ordinary people can understand what *conduct* is prohibited.'" *Id.* (citing *Gray*, 96 F.3d at 776) (emphasis in original). This Court, "not convinced there was [error]," rejected Branson's unpreserved challenge.

Squire's challenge, like that in *Branson*, "goes beyond the contours of the statute" and essentially argues that the *Bruen/Diaz* line of cases "spawned vagueness." *Branson*, 139 F.4th at 479. Although he does not explicitly point to *Bruen* and its progeny, Squire's argument that "§ 922(g)(1) leaves ordinary people uncertain as to what convictions for what crimes actually fall within" the statute and "which persons and what possessions are actually prohibited from possessing firearms as a result" is directly tied to the shift in precedent created by *Bruen.* Squire Br. at 56. As noted by *Branson*, this represents a misunderstanding of the

vagueness doctrine. *Branson*, 139 F.4th at 478. The statute itself clearly defines what is prohibited — possessing a firearm as a felon — and subsequent judicial interpretation does not render the statute vague. *Id.* at 479 ("We are aware of no precedent that permits a vagueness challenge to circumvent the text because a court's interpretation has rendered vague an otherwise pellucid statutory provision.") (citing *Columbia Nat. Ress., Inc. v. Tatum*, 58 F.3d 1101, 1106 (6th Cir. 1995) ("No precedent supports the proposition that a party may attack a Supreme Court decision as void for vagueness.")); *Cf. Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (holding a California statue "as presently drafted and construed by the state courts" was unconstitutionally vague.). There is no doubt that Squire was aware his conduct was prohibited, as evidenced by the firearm being hidden under the oven. ROA.166. Even accounting for the different standard of review in *Branson*, the statute is not unconstitutionally vague post *Bruen*. Squire's vagueness claim fails.

## III. The remainder of Squier's challenges are foreclosed. [Squire Issues IV and V].

Squire also claims that his conviction under 18 U.S.C. § 922(g)(1) both violates the Second Amendment facially under *Bruen*, *see* Squire Br. 58–59 and is unconstitutional because it exceeds Congress's power to regulate interstate commerce. *See* Squire Br. 59–62. As he concedes, *see* Squire Br. 58, 60, his challenge is foreclosed by this Court's precedent.

## CONCLUSION

For the foregoing reasons, the Court should affirm Curtis Squire's conviction and sentence.

Respectfully submitted,

MICHAEL M. SIMPSON
ACTING UNITED STATES ATTORNEY

/s/ *Patrick Barr*

PATRICK BARR
Assistant United States Attorney
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3029
E-Mail: patrick.barr@usdoj.gov

**CERTIFICATE OF SERVICE AND ECF COMPLIANCE**

I hereby certify that on this 18th day of December, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. The following ECF-registered counsel of record was served by Electronic Notice of Docket Activity:

Steven Spires, Steven_Spires@fd.org

I further certify the foregoing document meets the required privacy redactions; that it is an exact copy of the paper document; and the document has been scanned with the most recent version of a commercial virus scanning program and is virus-free.

/s/ *Patrick Barr*
PATRICK BARR