No. 25-30324

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

CURTIS SQUIRE,

*Defendant-Appellant*

---

On Appeal from the United States District Court
for the Eastern District of Louisiana,
Hon. Wendy Baldwin Vitter
Docket No. 2:24-CV-41-1

---

**BRIEF OF THE STATE OF LOUISIANA AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT AND REVERSAL**

---

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

## CERTIFICATE OF INTERESTED PERSONS

Under Fifth Circuit Rule 28.2.1, the State of Louisiana, as a governmental entity, need not furnish a certificate of interested persons.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS .......................................ii

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF INTEREST ..................................................................1

INTRODUCTION ..................................................................................3

ARGUMENT ........................................................................................10

A. Properly Interpreted, § 922(g)(1) Prohibits Possession Bearing a Present Connection with Ongoing Interstate Commerce. ......................................................................10

B. This Interpretation Is Consistent with *Scarborough*. ............21

CONCLUSION .....................................................................................32

CERTIFICATE OF SERVICE ...............................................................33

CERTIFICATE OF COMPLIANCE ......................................................34

## TABLE OF AUTHORITIES

### Cases

*Airlines for Am. v. DOT*,
110 F.4th 672 (5th Cir. 2024) ........................................ 31

*Alderman v. United States*,
131 S. Ct. 700 (2011) ........................................ 5

*Barrett v. United States*,
423 U.S. 212 (1976) ........................................ 12, 20

*D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*,
88 F.4th 602 (5th Cir. 2023) ........................................ 11

*Exelon Wind 1, L.L.C. v. Nelson*,
766 F.3d 380 (5th Cir. 2014) ........................................ 7, 16

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) ........................................ 1, 10

*In re GFS Indus., L.L.C.*,
99 F.4th 223 (5th Cir. 2024) ........................................ 13

*Louisiana v. Callais*,
146 S. Ct. 1131 (2026) ........................................ 8

*Mallory v. Norfolk S. Ry. Co.*,
600 U.S. 122 (2023) ........................................ 29

*Pulsifer v. United States*,
601 U.S. 124 (2024) ........................................ 16

*Russello v. United States*,
464 U.S. 16 (1983) ........................................ 14

*Scarborough v. United States*,
431 U.S. 563 (1977) .......................................................... passim

*United States v. Bass*,
404 U.S. 336 (1971) .......................................................... 19

*United States v. Bonner*,
159 F.4th 338 (5th Cir. 2025) .......................................................... 5, 19

*United States v. Hemani*,
146 S. Ct. 1677 (2026) .......................................................... 4

*United States v. Johnson*,
956 F.3d 740 (5th Cir. 2020) .......................................................... 8

*United States v. Lauderdale Cnty.*,
914 F.3d 960 (5th Cir. 2019) .......................................................... 17

*United States v. Lopez*,
514 U.S. 549 (1995) .......................................................... 1, 5, 8, 10

*United States v. Rawls*,
85 F.3d 240 (5th Cir. 1996) .......................................................... 3, 6, 7, 21

*United States v. Seekins*,
52 F.4th 988 (5th Cir. 2025) .......................................................... 5, 19

*United States v. Squire*,
182 F.4th 481 (5th Cir. 2026) .......................................................... 2, 8

*Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*,
48 F.4th 1298 (11th Cir. 2022) .......................................................... 12

*Wheatland Tube Co. v. United States*,
26 F. Supp. 3d 1372 (Ct. Int'l Trade 2014) .......................................................... 12

**Statutes**

7 U.S.C. § 2160 .................................................................... 15

16 U.S.C. § 1423 .................................................................... 15

18 U.S.C. § 175 .................................................................... 15

18 U.S.C. § 229 .................................................................... 15

18 U.S.C. § 842 .................................................................... 15

18 U.S.C. § 922 .................................................................... passim

18 U.S.C. § 1201 .................................................................... 25, 28

18 U.S.C. § 1202 .................................................................... passim

18 U.S.C. § 2315 .................................................................... 15

18 U.S.C. § 2332 .................................................................... 15

26 U.S.C. § 5751 .................................................................... 14

26 U.S.C. § 5861 .................................................................... 14

42 U.S.C. § 2122 .................................................................... 15

La. R.S. § 14:95.1 .................................................................... 2

**Other Authorities**

A. Scalia & B. Garner, Reading Law 93 (2012) .................................... 16

Firearm Owners' Protection Act of 1986,
Pub. L. 99-308, 100 Stat. 449 .................................................... 27, 28

## STATEMENT OF INTEREST

The State of Louisiana has a profound interest in the proper interpretation and application of federal laws enacted under Congress's Commerce Clause authority. In our constitutional system, Congress's enumerated powers "are few and defined," while "[t]hose which are to remain in the State governments are numerous and indefinite." *United States v. Lopez*, 514 U.S. 549, 552 (1995) (quoting The Federalist No. 45). That diffusion of power prevents "the accumulation of excessive power" in either the federal government or the states. *Id.* (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991)). And when Congress exceeds its authority, it upsets the "healthy balance of power between the States and the Federal Government [critical to] reduc[ing] the risk of tyranny and abuse from either front." *Id.* (quoting *Gregory*, 501 U.S. at 458).

So it is where, as here, Congress's Commerce Clause power is in question. The abuse of that power threatens both the several states and individual liberty by "convert[ing] congressional authority under the Commerce Clause to a general police power of the sort retained by the states." *Id.* at 567; *see id.* at 566 ("The Constitution ... withhold[s] from Congress a plenary police power that would authorize enactment of every

type of legislation."). In cases such as this, therefore, the courts and the states alike share "a particular duty to ensure that the federal-state balance is not destroyed." *Id.* at 581 (Kennedy, J., concurring).

Louisiana's interest in this case, in fact, is even more direct. This case arises out of Louisiana. It involves a federal felon-in-possession charge against a Louisiana citizen, Mr. Squire, based on his underlying state-law convictions. *See* ROA.167; ROA.214-215 (citing state-law convictions). And it implicates Louisiana's own sovereign authority to wield its police powers within its borders as it sees fit—Louisiana was set to prosecute Mr. Squire for violating Louisiana's own felon-in-possession statute, *see* La. R.S. § 14:95.1, until the federal government stepped in to take over the case and charge him under federal law.

Moreover, given the "magnitude" of this case, "input from many stakeholders," including "state solicitors general," *United States v. Squire*, 182 F.4th 481, 482 & n.2, 483 (5th Cir. 2026) (Higginson, J., dissenting from the order granting rehearing en banc), would be beneficial to the Court. That is especially so here because Louisiana's brief addresses a threshold statutory-interpretation question that is critical to this Court's review and the Supreme Court's ultimate review.

To be clear, although Louisiana files this brief in support of Mr. Squire, Louisiana's view is not that he should suffer no criminal consequences for being a felon-in-possession. It is instead that, in our constitutional system, Louisiana—not the federal government—possesses the power to assign any criminal liability on these facts.

## INTRODUCTION

Section 922(g)(1) of Title 18 of the United States Code deems it "unlawful" for a felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

This Court has long considered itself bound by *Scarborough v. United States*, 431 U.S. 563 (1977), to interpret the "possess in or affecting commerce" element in § 922(g)(1) to mean that a felon violates the statute so long as "the firearm [he] possessed ... had previously traveled in interstate commerce"—even if, for example, that interstate travel occurred decades prior when the firearm left the state where it was manufactured. *E.g.*, *United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996). Likewise citing *Scarborough*, this Court has deemed itself bound

to hold that, so interpreted, § 922(g)(1) does not exceed Congress's Commerce Clause power. *See id.*

"[L]ower court judges"—including members of this Court—"have for decades concluded that under [the Supreme] Court's precedents, § 922(g) exceeds Congress's power to regulate interstate commerce." *United States v. Hemani*, 146 S. Ct. 1677, 1696 (2026) (Thomas, J., concurring) (collecting citations). That conclusion is plainly correct if *Scarborough*'s statutory-interpretation holding governs § 922(g)(1).

For, if Congress could criminally sanction a felon simply because a firearm he possesses happened to previously travel in interstate commerce, then Congress likewise could (under its Commerce Clause power) criminally sanction a Louisianan for devouring a half-gallon of Blue Bell ice cream (so long as that Blue Bell was made in Texas); playing a vintage Gibson Les Paul guitar (so long as that Les Paul was made in Tennessee); making brownies with a KitchenAid mixer (so long as that KitchenAid was made in Ohio); swinging a Louisville Slugger (so long as that Slugger was made in Kentucky); or driving a Ford truck (so long as that Ford was made in Michigan).

And while Congress could not criminally sanction that same Louisianan for seasoning a gumbo with Tony Chachere's or Tabasco sauce (both prides of Louisiana), Congress could criminally sanction every *non*-Louisianan for doing so. *Cf. Alderman v. United States*, 131 S. Ct. 700, 703 (2011) (Thomas, J., dissenting from denial of certiorari) ("The Government actually conceded at oral argument in the Ninth Circuit that Congress could ban possession of french fries that have been offered for sale interstate commerce.").

The absurdity speaks for itself—and it directly contravenes the Supreme Court's modern Commerce Clause jurisprudence. *See, e.g.*, *Lopez*, 514 U.S. at 558. That is why members of this Court and others are exactly right to say that, if *Scarborough* controls this Court's statutory interpretation of § 922(g)(1), then § 922(g)(1) is a walking constitutional violation. *See, e.g.*, *United States v. Bonner*, 159 F.4th 338, 339–43 (5th Cir. 2025) (Willett, J., joined by Duncan, J., concurring); *United States v. Seekins*, 52 F.4th 988, 988–92 (5th Cir. 2025) (Ho, J., joined by Smith and Engelhardt, JJ., dissenting from denial of rehearing en banc).

The best way to remedy the § 922(g)(1) problem, however, is not to strike down § 922(g)(1) as unconstitutional. It is instead to hold, as a

matter of statutory interpretation, that a felon does not "possess [a firearm] in or affecting commerce" in violation of § 922(g)(1) simply because "the firearm [he] possessed ... previously traveled in interstate commerce." *Rawls*, 85 F.3d at 242. Rather, the possession prohibited by § 922(g)(1) is possession of a firearm "with a present connection" to ongoing interstate commerce." *Scarborough*, 431 U.S. at 568 (quotation marks omitted).

This Court has assumed itself bound by *Scarborough*'s statutory interpretation to hold otherwise—but that is a mistake. *Scarborough* interpreted a predecessor to § 922(g)(1), not § 922(g)(1) itself. That matters because, after *Scarborough*, Congress repealed that statutory predecessor, renovated § 922(g)(1), and inserted new statutory language that directly overrides *Scarborough*'s analysis. Most significantly, next to the phrase "possess in or affecting commerce," Congress placed (in the same sentence) the phrase "receive any firearm ... which has been shipped or transported in interstate or foreign commerce," *see* § 922(g)(1)—a phrase that *Scarborough* itself said is "precise language ... indicat[ing] that a present nexus with commerce is *not* required," 431 U.S. at 570 (emphasis added).

The natural inference from the contrast in this new sentence is that the adjoining phrase "possess in or affecting commerce" *does* require a present connection with ongoing interstate commerce. Indeed, that inference is not just natural but necessary to avoid rendering superfluous the phrase "receive any firearm ... which has been shipped or transported in interstate or foreign commerce." If, as *Rawls* and its progeny hold, "possess in or affecting commerce" broadly captures possession of a firearm that "previously traveled in interstate commerce," 85 F.3d at 242, then "receive any firearm" does zero work—for a felon who "receive[s]" a firearm that previously traveled in interstate commerce necessarily also "possess[es]" it. *Cf. Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 399–400 (5th Cir. 2014) (explaining "one of the most basic interpretive canons"—"that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (citation omitted)).

That natural and necessary statutory interpretation is the best way to resolve this case. It is consistent with *Scarborough* itself, which all but said that the contrast above would (if it appeared in the same sentence) require possession with a present connection to interstate commerce. *See*

*Scarborough*, 431 U.S. at 569–71 (declining to draw any inferences from the contrast because the language then appeared under different legislative titles, one of which was "enacted hastily with little discussion and no hearings"). It respects this Court's "oblig[ation] to consider nonconstitutional issues that would be dispositive of the appeal before [it] reach[es] a constitutional question." *United States v. Johnson*, 956 F.3d 740, 743 & n.5 (5th Cir. 2020) (citation omitted). And it avoids some of the puzzling implications of deeming § 922(g)(1) facially unconstitutional. *Cf. Squire*, 182 F.4th at 482 & n.1 (Higginson, J.).[1]

For those members of the Court who may be inclined to strike § 922(g)(1) down as unconstitutional, this statutory interpretation likewise provides an extraordinarily valuable first step in the analysis. As the Supreme Court recently demonstrated, *see Louisiana v. Callais*, 146 S. Ct. 1131 (2026), sometimes the best answer to obvious

[1] The statute has plenty of at least arguably constitutional applications. Take the human trafficker armed to the teeth, or the peaceful and repentant felon turned truck driver who is armed simply for self-defense—each of whom crosses state lines. They plainly "possess [a firearm] in ... commerce," § 922(g)(1), and at least arguably may be subject to Congress's Commerce Clause power because they are "persons ... in interstate commerce," *Lopez*, 514 U.S. at 558. The same goes for the felon standing on the I-10 Sabine River Bridge and firing indiscriminately at 18-wheelers traveling between Texas and Louisiana. He plainly "possesses [a firearm] ... affecting commerce," § 922(g)(1), and at least arguably may be subject to Congress's Commerce Clause power because "Congress is empowered to regulate and protect the instrumentalities of interstate commerce," *Lopez*, 514 U.S. at 558.

constitutional problems is to kick the tires on the underlying statutory interpretation. Barring a decision resting solely on statutory grounds as Louisiana suggests, therefore, the best way to set this case up for likely Supreme Court review is to give that Court two bases to affirm this Court's decision: (a) properly interpreted, § 922(g)(1) does not prohibit mere possession of a firearm that previously happened to travel in interstate commerce; and (b) even if it did, it would exceed Congress's Commerce Clause power. Structured that way, this Court's statutory analysis would surgically eliminate the existing constitutional problems, while giving the Supreme Court an additional offramp if that Court believes the heavy machinery of constitutional invalidation is warranted.

*　　*　　*

For Louisiana, this case is about basic principles of federalism and Louisiana's sovereign prerogative to wield its traditional police powers within its borders as it sees fit. Louisiana was on the precipice of prosecuting and convicting Mr. Squire for being a felon-in-possession in violation of Louisiana law when the federal government showed up to make a federal case out of Louisiana's efforts. Sometimes Louisiana may appreciate the assist; other times not so much. But either way, the

aggrandizement of Congress's Commerce Clause power poses a serious threat to our federalism and individual liberty. The Court should thus preserve the "healthy balance of power between the States and the Federal Government," *Lopez*, 514 U.S. at 552 (quoting *Gregory*, 501 U.S. at 458), by interpreting § 922(g)(1) according to its plain text—and hold that a felon "possess[es] [a firearm] in or affecting commerce" only if that possession has a present connection with ongoing interstate commerce.

## ARGUMENT

### A. Properly Interpreted, § 922(g)(1) Prohibits Possession Bearing a Present Connection with Ongoing Interstate Commerce.

As legislative drafting goes, § 922(g)(1) is not Congress's finest work. But the statutory text is clear enough for present purposes. It provides:

> It shall be unlawful for any person—
>
> (1) who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year;
>
> ...
>
> to <u>ship</u> or <u>transport</u> in interstate or foreign commerce, or <u>possess</u> in or affecting commerce, any firearm or ammunition; or to <u>receive</u> any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

§ 922(g). In the excerpt above, Louisiana has underlined the operative (and prohibited) verbs: ship, transport, possess, and receive. Five key points establish that the phrase "possess in or affecting commerce" means possession with a present connection to ongoing interstate commerce. (For efficiency purposes, although the statute covers both interstate and foreign commerce, the discussion below generally will refer only to "interstate commerce.")

1. To begin, the statute distinguishes—with a semi-colon—between prohibited acts with a present connection to *ongoing* interstate commerce (ship, transport, or possess a firearm or ammunition) and a prohibited act with a connection to *past* interstate commerce (receive a firearm or ammunition).

Consider the first clause. The phrase "ship or transport *in* interstate or foreign commerce" specifies prohibited acts that may occur only in commerce itself. So, too, the phrase "possess *in or affecting* commerce" specifies a prohibited act that may occur only in commerce, or at least (given the present participle) contemporaneously with interstate commerce. *Cf. D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 610 (5th Cir. 2023) ("The word

‘providing,’ used here as a present participle, most commonly describes a person who is *currently* providing services.”); *accord Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1307 (11th Cir. 2022) (“A present participle is used to signal present and continuing action.”). The prohibited acts in both phrases, therefore, are directly tied to ongoing interstate commerce.

Compare the second clause. There, the phrase “receive any firearm or ammunition *which has been shipped or transported* in interstate or foreign commerce” specifies a prohibited act that may occur only *after* the firearm or ammunition has moved in commerce. *See, e.g.*, *Wheatland Tube Co. v. United States*, 26 F. Supp. 3d 1372, 1383 (Ct. Int’l Trade 2014) (“The present perfect tense in the passive voice describes something that has happened in the past[.]”). As the Supreme Court has explained, this framing in “the present perfect tense[]” ties the prohibited act (“receiv[ing]” a firearm or ammunition) to “an act that has been completed”—*i.e.*, the shipment or transportation of the firearm or ammunition in interstate commerce. *Barrett v. United States*, 423 U.S. 212, 216–17 (1976).

The dividing semi-colon at the end of § 922(g)(1) thus serves a key function: It separates those prohibited acts tied to ongoing interstate commerce (the first clause) from the prohibited act tied to past interstate commerce (the second clause). On that understanding, the phrase "possess in or affecting commerce"—which appears in the first clause—means possession with a present connection to ongoing interstate commerce. Put otherwise, mere possession of a firearm or ammunition that previously moved in interstate commerce does not suffice.

2. That interpretation is correct particularly because Congress prohibited only the *receipt* of "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." § 922(g)(1). Indeed, although Congress used both the word "possess" and the word "receive" in this sentence, it used only the word "receive" with respect to a firearm or ammunition that has been shipped or transported in interstate commerce.

Basic rules of statutory interpretation thus bar reading § 922(g)(1) to also prohibit the "possession" of "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *See, e.g.*, *In re GFS Indus., L.L.C.*, 99 F.4th 223, 230 (5th Cir. 2024) ("We cannot

add words ... that Congress did not enact."); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation omitted)).

Adherence to those rules is especially important here because this is not the only time Congress drew a distinction between possession and receipt. Throughout § 922 itself, Congress repeatedly used "possess" and "receive" alongside each other. *See* § 922(h)(1), (j), (k), (p)(1), (s)(7)(B), (t)(6)(B); *see also* § 922(h)(p)(2), (p)(3), (s)(1)(A)(ii), (s)(2), (s)(4), (s)(7)(A), (t)(6)(A) ("possession" and "receipt"). Occasionally Congress also used one term but not the other. *Compare, e.g.*, § 922(a)(9), (h)(2), (*l*), (n) ("receive" but not "possess"), *with, e.g.*, § 922(o)(1), (q)(2)(A), (x)(2) ("possess" but not "receive").

That general distinction between "possess" and "receive," moreover, is just one example of many in the United States Code where Congress has drawn the same distinction. *See, e.g.*, 26 U.S.C. § 5861(b), (c), (d), (h), (i), (k) ("receive or possess a firearm"); 26 U.S.C. § 5751(a)(1), (2), (3) ("receive, possess ... any tobacco products"); 18 U.S.C. § 1202(a), (b)

("receives, possesses" ransom money); 18 U.S.C. § 175c(a)(1) ("receive, possess ... variola virus"); 42 U.S.C. § 2122(a) ("receive, possess ... any atomic weapon"); 7 U.S.C. § 2160(a)(2)(A) ("receive, possess ... a dog or cat to be slaughtered for human consumption"); 18 U.S.C. § 229(a)(1) ("receive, ... possess, ... any chemical weapon"); 18 U.S.C. § 2332g(a)(1)(A) ("receive, possess ... an explosive or incendiary rocket or missile"); 18 U.S.C. § 842(h) ("receive, possess ... any stolen explosive materials"); 18 U.S.C. § 2315 ("receives, possesses ... any falsely made, forged, altered, or counterfeited securities or tax stamps"); 16 U.S.C. § 1423a(a)(3) ("possess, ... receive, ... any polar bear").

All to say that Congress's prohibition against a felon "*receiv[ing]* any firearm or ammunition which has been shipped or transported in interstate or foreign commerce," § 922(g)(1) (emphasis added), is no accident. It is a deliberate word choice that unmistakably excludes the word "possess"—a word used elsewhere in the same sentence and often alongside "receive" itself. It would thus be wrong to hold that a felon violates § 922(g)(1)'s "possess in or affecting commerce" element simply by possessing a firearm that has been shipped or transported in interstate commerce. Congress refused to make that choice—and this

Court should, too. *See, e.g.*, A. Scalia & B. Garner, Reading Law 93 (2012) ("Nothing is to be added to what the text states or reasonably implies[.]"); *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, ... different terms usually have different meanings.").

3. That is especially so because, if "possess in or affecting commerce" simply meant possession of a firearm that previously traveled in interstate commerce, that interpretation would render the rest of § 922(g)(1) superfluous. *Cf. Exelon Wind 1, L.L.C.*, 766 F.3d at 399–400 (explaining "one of the most basic interpretive canons"—"that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (citation omitted)); Reading Law 174 ("If possible, every word and every provision is to be given effect[.]").

Under that interpretation, a felon possesses a firearm or ammunition "in and affecting commerce" so long as it previously moved in interstate commerce. If that is so, however, then § 922(g)(1)'s prohibition against a felon "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce" is meaningless. For any felon who *receives* a firearm or ammunition that

previously traveled in interstate commerce also (as this interpretation goes) *possesses* the firearm and ammunition "in and affecting commerce" in violation of the first clause of § 922(g)(1). This interpretation would thus make the second clause of § 922(g)(1) a subset of the first, stripping the second clause of any independent meaning or effect.

The way to avoid that superfluity problem is to cabin the first clause in § 922(g)(1) according to its plain text: It prohibits possession of a firearm or ammunition "in and affecting commerce," *i.e.*, with a present connection to ongoing interstate commerce. It does not touch possession (or receipt) of a firearm or ammunition that "*has been* shipped or transported in interstate or foreign commerce." § 922(g)(1) (emphasis added). That is the province of the second clause, which prohibits only the "recei[pt]" of any firearm or ammunition that has previously moved in interstate commerce. *Id.*

4. At the risk of piling on, the absurdity canon confirms that "possess in or affecting commerce" cannot mean mere possession of a firearm or ammunition that previously traveled in interstate commerce. *Cf., e.g.*, *United States v. Lauderdale Cnty.*, 914 F.3d 960, 964 (5th Cir. 2019) ("When the language is plain, we must enforce the statute's plain

meaning, unless absurd." (quotation marks omitted)). If it did, then a felon in Tennessee could escape § 922(g)(1) liability despite possessing a Smith & Wesson that never left Tennessee after it was manufactured there; no such luck for felons in any other state who happen to possess a Tennessee-made Smith & Wesson.

The same goes for felons with Stag Arms firearms in Wyoming; felons with Daniel Defense and Remington firearms in Georgia; felons with Colt, Mossberg, and Ruger firearms in Connecticut; felons with Bushmaster firearms in Nevada; felons with Kel-Tec firearms in Florida; felons with Sig Sauer firearms in New Hampshire; and felons with Kimber firearms in Alabama. Each of those felons is immune from § 922(g)(1) liability so long as each firearm never left the state in which the firearm was manufactured—but felons who possess the same firearms out-of-state stand in violation of § 922(g)(1).

That is utterly absurd. A felon in Connecticut who possesses a 100-year-old Colt 1911 that never left Connecticut (where it was manufactured) possesses that firearm "in and affecting commerce" no more and no less than does a felon in Louisiana whose family has passed down the same Colt 1911 for generations. The way to avoid the absurdity

is to say that § 922(g)(1) regulates firearm possession by every American felon equally—based on whether their possession bears a present connection with ongoing interstate commerce.

5. Finally, if there were any doubt about this unambiguous statutory text, basic principles of constitutional avoidance and federalism would counsel in favor of the above interpretation. There is no serious dispute that the broader interpretation espoused by *Rawls* and its progeny "dramatically expands the reach of the federal government under the Commerce Clause. No Supreme Court precedent requires it. And no proper reading of the Commerce Clause permits it." *Bonner*, 159 F.4th at 343 (Willett, J.) (quoting *Seekins*, 52 F.4th at 992 (Ho, J.)). Moreover, in this delicate context where Congress is wont to enjoy state police powers for itself, Congress cannot "be deemed to have significantly changed the federal-state balance" "unless [it] conveys its purpose clearly." *United States v. Bass*, 404 U.S. 336, 349 (1971). Any ambiguity, therefore, would have to be resolved in favor of the State's interpretation detailed above.

*  *  *

This straightforward statutory interpretation resolves this case. Mr. Squire was charged with, and pleaded guilty to, possession of a firearm and ammunition "in and affecting commerce." ROA.215, 229-230. Properly interpreted, possession of a firearm and ammunition "in and affecting commerce" means possession bearing a present connection with ongoing interstate commerce. There is no dispute that the firearm and ammunition in his possession lacked any such connection. That the firearm and ammunition were "manufactured" at some unknown time and at some unknown location outside of Louisiana, ROA.230, does not establish the requisite present connection with ongoing interstate commerce. Accordingly, he did not violate § 922(g)(1).[2]

---

[2] Mr. Squire was not charged with *receipt* in violation of § 922(g)(1)'s prohibition against a felon "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Accordingly, there is no live question about whether such a charge would be valid. For the sake of completeness, however, Louisiana notes that the Supreme Court's *Barrett* decision affirmed a conviction where "a firearm [] already ha[d] completed its interstate journey and ha[d] come to rest in the dealer's showcase at the time of its purchase and receipt by the felon." 423 U.S. at 217. That decision is statutorily and constitutionally dubious on its own terms. But, if it has any hope of surviving modern Commerce Clause jurisprudence, it almost certainly must be cabined to "the firearm's first retail transaction" once its interstate journey ended. *Id.* at 214.

### B. This Interpretation Is Consistent with *Scarborough*.

For decades, this Court's precedents have foreclosed the straightforward analysis above based on *Scarborough*. Deeming *Scarborough* controlling, this Court has held that the "possess in or affecting commerce" element in § 922(g)(1) "can be satisfied if the firearm possessed by a convicted felon had previously traveled in interstate commerce." *Rawls*, 85 F.3d at 243. With deep respect, that is wrong. To understand why, it is necessary to consider (1) the statutory landscape when the Supreme Court decided *Scarborough* and (2) how that statutory landscape subsequently changed, thereby (3) facilitating the statutory analysis in Part A.

1. Start in the 1960s. During that decade, Congress substantially reworked federal criminal law in the Omnibus Crime Control and Safe Streets Act of 1968 (Omnibus Crime Control Act) and the Gun Control Act of 1968. *Scarborough*, 431 U.S. at 563–64, 569 n.8. Among many other changes, the Omnibus Crime Control Act (as amended by the Gun Control Act) contained three statutory provisions relevant here. The table below situates the relevant portions of each statute (as they read at the time) side-by-side:

| 18 U.S.C. § 922(g) (Title I of the Gun Control Act of 1968; originally § 922(e) in Title IV of the Omnibus Crime Control Act) | 18 U.S.C. § 922(h) (Title I of the Gun Control Act of 1968; originally § 922(f) in Title IV of the Omnibus Crime Control Act) | 18 U.S.C. App. § 1202(a) (Title VII of the Omnibus Crime Control Act) |
|---|---|---|
| It shall be unlawful for any person—<br><br>(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;<br><br>(2) who is a fugitive from justice;<br><br>(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug ... or narcotic drug ...; or<br><br>(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;<br><br>to ship or transport any firearm or ammunition in interstate or foreign commerce. | It shall be unlawful for any person—<br><br>(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;<br><br>(2) who is a fugitive from justice;<br><br>(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug ... or narcotic drug ...; or<br><br>(4) who has been adjudicated as a mental defective or who has been committed to any mental institution;<br><br>to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. | Any person who—<br><br>(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or<br><br>(2) has been discharged from the Armed Forces under other than honorable conditions, or<br><br>(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or<br><br>(4) having been a citizen of the United States has renounced his citizenship, or<br><br>(5) being an alien is illegally or unlawfully in the United States,<br><br>and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. |

As the table shows, the three then-existing statutory provisions significantly overlapped. For example, § 922(g) and § 922(h) covered the same classes of individuals but prohibited different acts—shipping and transporting firearms and ammunition in commerce (§ 922(g)) versus receiving firearms and ammunition that have been shipped or transported in commerce (§ 922(h)). Meanwhile, § 1202(a) covered some of the same classes of individuals (such as felons) but covered different classes as well (such as citizens who renounced their citizenship). Similarly, § 1202(a) targeted some acts prohibited in § 922 (such as the transportation of firearms or ammunition in commerce, § 922(g)), but it did not regulate the shipment of firearms or ammunition in commerce (*cf.* § 922(g))—and it added a different prohibited act: "possesses ... in commerce or affecting commerce."

*Scarborough* addressed the "possesses ... in commerce or affecting commerce" element in then-existing § 1202(a)(1). "The issue [was] whether proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy" that element, or whether the statute requires "proof of a present connection with commerce." *Scarborough*, 431 U.S. at 564, 569. The *Scarborough* Court said that no

present connection with commerce was required based on three reasons relevant here.

*First*, the Court stated that the phrase "possesses ... in commerce or affecting commerce" "was ambiguous at best" and thus could not be assumed to require "a present nexus with commerce." *Id.* at 570. The Court made that statement based on a contrast with then-existing § 922. In particular, the Court heard the criminal defendant's argument that § 922(h)—which "employ[s] the present perfect tense, as it prohibited a convicted felon from receiving a firearm 'which has been shipped or transported in interstate or foreign commerce'"—plainly shows that "Congress knows how to specify completed transactions." *Id.* at 569. Given that fact, the defendant continued, the phrase "possesses ... in commerce or affecting commerce" in § 1202(a)(1) must mean that Congress "wanted to reach only ongoing" commerce. *Id.*

The Court did not dispute the power of that comparison—but it declined to draw the comparison because the two statutes arose from different Titles in the Omnibus Crime Control Act. The Court characterized Title VII (which housed § 1202(a)(1)) as "a last-minute amendment to the Omnibus Crime Control Act enacted hastily with little

discussion and no hearings"—and "not the product of model legislative deliberation or draftsmanship." *Id.* at 569–70. By contrast, said the Court, Title IV (which housed § 922) was "a carefully constructed package of gun control legislation" in which verb tenses "were chosen with care." *Id.* at 570. So, while § 922(h) obviously "indicate[d] that a present nexus with commerce [was] not required" and other provisions in § 922 obviously "indicate[d] that the gun must have a contemporaneous connection with commerce at the time of the offense," the Court found a comparison to § 922 "help[ful] [] not at all" in interpreting § 1202(a)(1). *Id.* at 570–71.

*Second*, the *Scarborough* Court found "somewhat more helpful" the legislative findings in 18 U.S.C. § 1201. *Id.* at 571. Specifically, the Court invoked Congress's "declar[ation] that 'the receipt, possession, or transportation of a firearm [by a covered individual] ... constitutes ... a burden on commerce or threat affecting the free flow of commerce.'" *Id.* (quoting former § 1201(1)). Coupling that declaration with the phrase "possesses in commerce or affecting commerce" in former § 1202(a)(1), the Court believed that Congress intended to reach both activities in commerce and those "substantially affecting interstate commerce." *Id.*

And relying on a floor statement from Louisiana's own Senator Russell Long (who introduced Title VII), the Court reasoned that this meant "outlaw[ing] the mere possession of weapons." *Id.* at 572. (That finding and floor statement, of course, do not unambiguously call for criminalizing possession that has no present connection with ongoing commerce. *Cf. id.* at 577 ("[T]he history is unambiguous and the text consistent with it.").)

*Third*, despite having already smuggled in legislative history, the Court next turned to very "brief" legislative history, *id.*—more excerpts from Senator Long's floor statements. In those statements, Senator Long said things like, "[u]pon his conviction, ... Title VII would deny every assassin, murderer, thief and burglar of [sic] the right to possess a firearm in the future." *Id.* at 573 (citation omitted). (Such statements, again, do not unambiguously call for criminalizing possession that has no present connection with ongoing commerce.)

Having given those three affirmative reasons for rejecting any requirement of a present connection to commerce, the *Scarborough* Court then quickly disposed of the criminal defendant's complaints otherwise, *id.* at 575–77, and ended the case. "[W]e see no indication that Congress

intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce," concluded the Court. *Id.* at 575; *see id.* at 577.

2. A decade later, however, Congress materially changed this statutory scheme through the Firearm Owners' Protection Act of 1986, Pub. L. 99-308, 100 Stat. 449. Most significantly, Congress "repealed" Title VII of the Omnibus Crime Control Act, including § 1202(a)(1), the substantive provision at issue in *Scarborough*. *See* 100 Stat. 459 (§ 104(b)). At the same time, Congress melded all three statutory provisions referenced above (former § 922(g), § 922(h), and § 1202(a)(1)) together into one sentence: modern-day § 922(g)(1). *See* 100 Stat. 452 (§ 102(6)). Specifically, it added the remaining classes of individuals from former § 1202(a)(1) into § 922(g)(1). *Id.* (§ 102(6)(B), (C)). And it changed the operative language at the end of § 922(g)(1) to prohibit all four acts previously prohibited by § 922(g), § 922(h), and § 1202(a)(1):

> by striking out "to ship or transport any firearm or ammunition in interstate or foreign commerce." and inserting in lieu thereof "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

*Id.* (§ 102(6)(D)).

At the same, Congress also repealed former § 1201, the findings provision on which *Scarborough* relied. 100 Stat. 459 (§ 104(b)). In their stead, Congress made new findings—which directly contrasted with former § 1201. Where former § 1201(1) presumed that "the receipt, possession, or transportation of a firearm" by covered individuals was "a burden on commerce or threat affecting the free flow of commerce," Congress expressly found in the Firearm Owners' Protection Act that "the rights of citizens ... to keep and bear arms under the second amendment to the United States Constitution" (among other constitutional rights) "require[d] additional legislation to correct existing firearms statutes and enforcement policies." 100 Stat. 449 (§ 1(b)(1)(A)). Further, Congress found it necessary to "reaffirm" findings from the Gun Control Act that were not cited in *Scarborough*: that "it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to ... any [] lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes."

*Id.* (§ 1(b)(2)). Where the § 1201 findings cited by *Scarborough* were decidedly *anti*-firearm possession, therefore, Congress's new findings are decidedly *pro*-firearm possession.

3. These post-*Scarborough* developments render *Scarborough*'s reasoning entirely useless in interpreting § 922(g)(1)'s "possess in or affecting commerce" element. *Cf. Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (only where "a precedent of [the Supreme] Court has direct application in a case" must a lower court follow that "directly control[ling]" precedent (citation omitted)).

To start, the statute *Scarborough* interpreted—§ 1202(a)(1)—is no more because Congress repealed it. *Scarborough*, by definition, is thus not directly controlling.

But more fundamentally, in renovating § 922(g)(1) as it did, Congress expressly eliminated the very reasons the Supreme Court gave for reaching the result it did in *Scarborough*. The Supreme Court disavowed comparing the phrases "has been shipped or transported in interstate or foreign commerce" (former § 922(h)) and "in commerce or affecting commerce" (former § 1202(a)(1)) solely because they arose from different Titles in the Omnibus Crime Control Act—and the Court

believed one Title was more carefully drafted than the other. 431 U.S. at 569–71. After *Scarborough*, however, Congress amended § 922(g)(1) to place both phrases *together in the same sentence*, separated only (and critically) by a semi-colon. No fair statutory interpretation, therefore, could ignore the implications of that amendment. And as detailed above, the natural and necessary understanding of modern § 922(g)(1) is that "possess in and affecting commerce" means possession bearing a present connection with ongoing interstate commerce. *Supra* Part A.

More, Congress deleted the congressional findings that the *Scarborough* Court found "somewhat more helpful" in defining possession as it did. 431 U.S. at 571–72. The Court inferred its definition from Congress's "declar[ation] that 'the receipt, possession, or transportation of a firearm ... constitutes ... a burden on commerce or threat affecting the free flow of commerce'"—a declaration the Court believed to be aimed at "outlaw[ing] the mere possession of weapons." *Id.* (citations omitted). That inference was dubious on its own terms, but it is completely irrelevant here given that Congress not only subsequently repealed that declaration but also added new *pro*-possession findings.

The same goes for the *Scarborough* Court's gesture at "brief" legislative history. *Id.* at 572. History regarding a now-repealed statute is irrelevant—and legislative history also is off limits here because the text of § 922(g)(1) is unambiguous. *See, e.g.*, *Airlines for Am. v. DOT*, 110 F.4th 672, 676 (5th Cir. 2024) ("[L]egislative history is not the law, nor can it muddy clear statutory language." (cleaned up)). But even if the Court wished to peek at the legislature history, it would find a complaint that former § 922(g), § 922(h), and § 1202(a)(1) articulated "inconsistent rules" and an explanation that new § 922(g)(1) "replaces" those inconsistent rules "with a straightforward and consistent one." S. Rep. 98-583 at 13; S. Rep. 97-476 at 19; H. Rep. 99-495 at 23. It is difficult to imagine a clearer call for interpreting new § 922(g)(1) precisely as it is written. *See supra* Part A.

* * *

With great respect for the many precedents of this Court that have assumed the Court is duty-bound to apply the *Scarborough* rule to new § 922(g)(1), none of those precedents undertook the detailed textual and historical analysis above. If the Court does so, it will find that *Scarborough* does not control. The Court should take that step in this

case: Overrule its post-*Scarborough* § 922(g)(1) precedents by interpreting the statute according to its plain text and in light of key statutory history, and hold that possession of a firearm or ammunition "in and affecting commerce" for purposes of § 922(g)(1) means possession bearing a present connection with ongoing interstate commerce.

## CONCLUSION

The Court should reverse.

Dated: August 31, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for the State of Louisiana*

## CERTIFICATE OF SERVICE

I certify that on August 31, 2026, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this brief complies with:

(1) the type-volume limitations of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because it contains 6,442 words, excluding the parts of the document exempted by Rule 32(f); and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook font, except for footnotes in 12-point font) using Microsoft Word (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated: August 31, 2026