No. 25-30324

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

CURTIS SQUIRE,

*Defendant-Appellant*

On Appeal from the United States District Court
for the Eastern District of Louisiana, 2:24-cv-41-1
Hon. Wendy Baldwin Vitter

## MOTION FOR LEAVE TO FILE BRIEF OF FIREARMS POLICY COALITION, INC. AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT AND REVERSAL


Bradley A. Benbrook
*Counsel of Record*
Stephen M. Duvernay
Jamie G. McWilliam
BENBROOK LAW GROUP, P.C.
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that under Fifth Circuit Rules 27.4 and 28.2.1, the following listed persons and entities have an interest in this motion and the proposed amicus brief. *See* 5th Cir. Rules 26.1., 27.4, 28.2.1, 29.2.1. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

1) Amicus Curiae:

   Firearms Policy Coalition, Inc., a nonprofit corporation, has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

2) Counsel for Amicus Curiae:

   BENBROOK LAW GROUP, P.C.
   Bradley A. Benbrook
   Stephen M. Duvernay
   Jamie G. McWilliam

/s/ Bradley A. Benbrook
Bradley A. Benbrook

## MOTION FOR LEAVE TO FILE AMICUS BRIEF

Pursuant to Federal Rule of Appellate Procedure 29, Firearms Policy Coalition, Inc. ("FPC") respectfully seeks leave to file the attached *amicus* brief supporting Plaintiffs-Appellees. All parties were timely notified of Amicus' intent to file this brief and have consented to its filing.

FPC is a nonprofit membership organization. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

FPC filed an amicus brief in *United States v. Hemani*, 146 S. Ct. 1677 (2026), where it argued that Congress lacked the Article I authority to enact the federal ban on possession of firearms by users of marijuana, 18 U.S.C. § 922(g)(3). Justice Thomas concurred to explain why "§ 922(g)(3) appears to exceed Congress's enumerated power to regulate interstate commerce," 146 S. Ct. at 1694 (Thomas, J. concurring), and he cited FPC's brief in his opinion, *id*. at 1696 n.* & 1697.

The proposed *amicus* brief explains why the government is wrong to assert that 18 U.S.C. § 922(g)(1)'s lifetime ban on firearm possession by felons is a valid

exercise of Congress' Commerce Clause power. As with the ban on firearm possession within 1,000 feet of a school in *United States v. Lopez*, 514 U.S. 549 (1995), Congress lacks the constitutional authority to ban the simple possession of a firearm by a felon.

The Supreme Court has repeatedly stressed the Founding principle—inherent in the delegation of limited and enumerated powers by the People and the States to the federal government—that Congress does not have a police power to legislate on any subject it wishes. Here, Louisiana has chosen to exercise *its* police power to ban possession of firearms by persons convicted of a "crime of violence." La. Rev. Stat. § 14:95.1(A)(1). Other States have their own versions of similar such laws. Significant federalism concerns arise when the federal government intrudes on state criminal law enforcement through the enactment of overlapping criminal laws.

Since Congress has no free-floating police power, every exercise of congressional authority must be authorized by an enumerated power in the Constitution. Congress cannot locate any such power to disarm citizens for wholly intrastate possession of firearms in Article I. Start with the Militia Organizing Clause, U.S. CONST., Art. I, § 8, cl. 16. The Organizing Clause gives Congress the "Power To … provide for organizing [and] *arming* … the Militia," not to *disarm* would-be members of the militia. *Id.* (emphasis added). The Organizing Clause thus

stands with the Second Amendment as important structural counterweights to the assertion of boundless authority to disarm citizens under the Commerce Clause.

And *Lopez* and *United States v. Morrison*, 529 U.S. 598 (2000), foreclose any argument that the Commerce Clause authorized Congress to enact § 922(g)(1). Among other things, § 922(g)(1): (1) does not regulate economic activity; (2) cannot be transformed into the regulation of interstate commerce by "aggregating" the effects of all the violence the law hopes to avoid; and (3) does not regulate any smaller part of a comprehensive economic program.

The only question under the Commerce Clause, then, is whether the addition of a once-traveled-in-interstate-commerce jurisdictional element can salvage this law. But a requirement that can be satisfied by virtually every single firearm in the Nation does not make this legislation any less of an attempted exercise of a police power than the law in *Lopez*. As Justice Thomas explained in *Alderman v. United States*, 562 U.S. 1163, 131 S. Ct. 700, 702 (2011) (Thomas, J., dissenting from denial of cert.), courts have improperly applied *Scarborough v. United States*, 431 U.S. 563 (1977), to allow the "mere identification of a jurisdictional hook" in a statute to undermine the constitutional principle recognized in *Lopez.*

While § 922(g)(1) cannot be justified under the permissive "substantial effects on interstate commerce" line of cases culminating in *Lopez*, *Morrison*, and *Jones v. United States*, 529 U.S. 848, 854–57 (2000), it also falls far outside the scope of the

original public meaning of the Commerce Clause. As Justice Thomas and scholars have explained, the Constitution uses the term "Commerce … among the several States" to mean "selling, buying, and bartering, as well as transporting for these purposes" across state lines. *Lopez*, 514 U.S. at 585 (Thomas, J., concurring). It manifestly did not mean to cover, as it has been allowed to cover, all "productive activities such as manufacturing and agriculture," not to mention countless other activities purported to have a "substantial effect" on interstate commerce. *Id*. at 586. This Court should recognize that proper meaning of "Commerce" here.

Because the proposed *amicus* brief will assist the Court, this motion should be granted, and the attached brief filed.

Respectfully submitted,

/s/ Bradley A. Benbrook
Bradley A. Benbrook
*Counsel of Record*
Stephen M. Duvernay
Jamie G. McWilliam
BENBROOK LAW GROUP, P.C.

*Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that on September 10, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

/s/Bradley A. Benbrook
Bradley A. Benbrook

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limits permitted by Fed. R. App. P. 27(d)(2)(a) because this brief contains 824 words, excluding exempted parts.

2. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3. Additionally, I certify that (1) any required redactions have been made in compliance with 5th Cir. R. 25.2.13; and (2) the document has been scanned with the most recent version of Avast Security virus detector and is free of viruses.

Dated: September 10, 2026

s/Bradley A. Benbrook
Bradley A. Benbrook