**25-30324**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA,**
**Plaintiff - Appellee**

**v.**

**CURTIS SQUIRE,**

**Defendant-Appellant.**

---

**On Appeal From the United States District Court**
**For the Eastern District of Louisiana**
**Case No. 2:24-CR-41**

---

# BRIEF OF AMICUS CURIAE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS SUPPORTING APPELLANT AND URGING REVERSAL

---


Gerald H. Goldstein
Cynthia H. Orr
GOLDSTEIN & ORR
315 E. Commerce St.,
Suite 301
San Antonio, TX
78205
(210) 226-1463

John D. Cline
LAW OFFICE OF JOHN D. CLINE
600 Stewart St., Suite 400
Seattle, WA 98101
(360) 320-6435

Attorneys for Amicus Curiae
NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS

**SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS**
**United States v. Curtis Squire**
**Case No. 25-30324**

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. This certificate supplements the certificate included in the en banc brief of appellant Curtis Squire. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

Cline, John D.

Goldstein, Gerald H.

National Association of Criminal Defense Lawyers. NACDL is a nonprofit corporation organized under the laws of the District of Columbia. It has no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

Orr, Cynthia H.

DATED: September 10, 2026

Respectfully submitted,

*/s/ John D. Cline*
John D. Cline

Attorney for Amicus Curiae
NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS

## TABLE OF CONTENTS

SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS ..................C-1

TABLE OF CITATIONS ..........................................................................ii

INTEREST OF AMICUS CURIAE ..........................................................1

SUMMARY OF ARGUMENT ..................................................................2

ARGUMENT ..........................................................................................4

I. SECTION 922(g)(1), AS APPLIED HERE, EXCEEDS CONGRESS' POWER UNDER THE COMMERCE CLAUSE ..........................................4

II. *SCARBOROUGH* DOES NOT CONTROL THE COMMERCE CLAUSE ANALYSIS ..........................................................................6

III. THE DISSENT'S CONCERNS CAN BE READILY ALLEVIATED .......14

CONCLUSION ........................................................................................16

## TABLE OF CITATIONS

**Page**

**Cases**

*Alderman v. United States*, 562 U.S. 1163 (2011) ....................8

*Bond v. United States*, 572 U.S. 844 (2014) ....................9

*Bond v. United States*, 564 U.S. 211 (2011) ....................10, 11, 13

*Ciminelli v. United States*, 598 U.S. 306 (2023) ....................9

*Cleveland v. United States*, 531 U.S. 12 (2000)....................9

*Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004) ....................8

*Gonzales v. Raich*, 545 U.S. 1 (2005) ....................5

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ....................10, 11

*Jones v. United States*, 529 U.S. 848 (2000)....................2, 4, 5, 9

*Scarborough v. United States*, 431 U.S. 563 (1977) ....................2, 3, 6, 7, 8, 9, 13, 14

*Skilling v. United States*, 561 U.S. 358 (2010)....................6

*United States v. Bonner*, 159 F.4th 338 (5th Cir. 2025)....................5, 8, 11

*United States v. Fitzhugh*, 984 F.2d 143 (5th Cir. 1993) ....................6

*United States v. Hemani*, 146 S. Ct. 1677 (2026) ....................4, 5

*United States v. Holston*, 343 F.3d 83 (2d Cir. 2003) ....................6, 15

*United States v. Kuban*, 94 F.3d 971 (5th Cir. 1996)....................7, 8

*United States v. Lopez*, 514 U.S. 549 (1995) ....................2, 3, 4, 5, 6, 8, 9, 15

*United States v. Morrison*, 529 U.S. 598 (2000)....................2, 3, 4, 5, 9

*United States v. Patton*, 451 F.3d 615 (10th Cir. 2006)....................2, 15

*United States v. Rawls*, 85 F.3d 240 (5th Cir. 1996)....................7

*United States v. Rodia*, 194 F.3d 465 (3d Cir. 1999) ........................................ 6, 15

*United States v. Seekins*, 52 F.4th 988 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 2668 (2023) ........................................ 7, 8

*United States v. Squire*, 182 F.4th 481 (5th Cir. 2026) ........................................ 3, 14

*United States v. Williamson*, 170 F.4th 435 (5th Cir. 2026) ........................................ 11

*Williams v. United States*, 458 U.S. 279 (1982) ........................................ 9

**CONSTITUTION AND STATUTES**

U.S. Const. Art. I, § 8, cl. 3 ........................................ *passim*

18 U.S.C. § 922(g)(1) ........................................ *passim*

18 U.S.C. § 922(g)(9) ........................................ 12

18 U.S.C. App. § 1202(a) ........................................ 3, 6, 7, 9

Cal. Penal Code § 29805 ........................................ 11

Conn. Gen. Stat. § 53a-217 ........................................ 11

Idaho Code Ann. § 18-310 ........................................ 12

Idaho Code Ann. § 18-3316 ........................................ 12

430 Ill. Comp. Stat. § 65/4 ........................................ 11

730 Ill. Comp. Stat. § 5/5-6-3 ........................................ 11

Mont. Code Ann. § 45-8-313 ........................................ 12

Mont. Code Ann. § 46-18-221 ........................................ 12

N.J. Stat. Ann. § 2C:58-3 ........................................ 11

N.Y. Penal Law § 265.00 ........................................ 11

N.Y. Penal Law § 265.01 ........................................ 11

N.Y. Penal Law § 265.02 ........................................ 11

18 Pa. Cons. Stat. § 6105 ........................................ 12

13 V.S.A. § 4017 ........................................................................................................12

13 V.S.A. § 5301 ........................................................................................................12

## INTEREST OF AMICUS CURIAE

Amicus Curiae National Association of Criminal Defense Lawyers (NACDL) is a nonprofit voluntary professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crime or misconduct.[1]

NACDL was founded in 1958. It has a nationwide membership of more than 12,000 and an affiliate membership of almost 40,000. NACDL's members include private criminal defense lawyers, public defenders, military counsel, law professors, and judges. NACDL is the only nationwide professional bar association for public defenders and private criminal defense lawyers. The American Bar Association recognizes NACDL as an affiliated organization and awards it full representation in its House of Delegates.

NACDL has long maintained that the proper allocation of criminal law enforcement between the state and federal governments is crucial to protect the rights of persons charged with crimes. NACDL submits this brief because the question presented here, concerning the constitutionality of 18 U.S.C. § 922(g)(1) as applied to a felon's possession of a firearm in his home, with no connection to

[1] Counsel for amicus state that no counsel for a party authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person other than amicus, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

interstate commerce other than the happenstance of the firearm having traveled from one state to another at some point in the past, has profound implications for our federal system of criminal law enforcement. In NACDL's view, finding § 922(g)(1) to be within Congress' Commerce Clause power under these circumstances would confer on Congress the general police power that the Framers refused to grant and thus undermine the protections our federal system provides.

## SUMMARY OF THE ARGUMENT

1. Squire's possession of a firearm in his home did not "substantially affect" interstate commerce, just as possession of a firearm in a school zone does not do so. *See United States v. Lopez*, 514 U.S. 549, 567 (1995). Unlike economic activity, non-economic conduct such as firearm possession cannot be aggregated with similar conduct to find the requisite substantial effect on interstate commerce. *See United States v. Morrison*, 529 U.S. 598, 613 (2000).

The presence of an interstate commerce element, absent in *Lopez*, does not immunize § 922(g)(1) from Commerce Clause review. *See, e.g., United States v. Patton*, 451 F.3d 615, 632 (10th Cir. 2006). As either a matter of statutory interpretation, as in *Jones v. United States*, 529 U.S. 848 (2000), or of constitutional analysis, as in *Lopez*, § 922(g)(1) does not reach purely local firearm possession.

2. Panels of this Court have erred in concluding that *Scarborough v. United States*, 431 U.S. 563 (1977), controls both the interpretation of § 922(g)(1)'s

interstate commerce element and analysis of the statute under the Commerce Clause. *Scarborough* construed 18 U.S.C. App. § 1202(a), a predecessor to § 922(g)(1), not § 922(g)(1) itself. As the State of Louisiana demonstrates in its amicus brief, there are substantial differences between the two statutes that produce a narrower interpretation of § 922(g)(1)'s jurisdictional element.

*Scarborough* did not address the constitutionality of § 1202(a), much less the constitutionality of § 922(g)(1). Moreover, if read as a constitutional decision, *Scarborough* cannot be reconciled with *Lopez* and its progeny or with basic tenets of federalism. *Scarborough* thus poses no impediment to the conclusion that *Lopez* and *Morrison* require: that as applied in this case, § 922(g)(1) exceeds Congress' power under the Commerce Clause.

3. Judge Higginson's dissent to the grant of rehearing en banc raises concerns about the effect of a ruling that § 922(g)(1) exceeds Congress' power. *United States v. Squire*, 182 F.4th 481, 482 (5th Cir. 2026) (Higginson, J., dissenting from grant of rehearing en banc). Three factors mitigate those concerns. First, a decision based on an interpretation of § 922(g)(1)'s interstate commerce element or an as-applied Commerce Clause challenge will have little impact on other statutes, given the narrow circumstances of this case (non-economic, purely local conduct connected to interstate commerce only by the happenstance of the firearm's movement from one state to another sometime in the past). Second, much of the

activity the dissent warns against will fall within other prohibitions in § 922(g)(1), including prohibitions against felons shipping or transporting firearms in interstate commerce. Third, every state has a statute prohibiting felons from prohibiting firearms, with variation from state to state. Consistent with the role of the states as the principal enforcers of criminal law, there is no harm, and much to be gained, from leaving purely local firearm possession in the hands of state prosecutors.

## ARGUMENT

### I. SECTION 922(g)(1), AS APPLIED HERE, EXCEEDS CONGRESS' POWER UNDER THE COMMERCE CLAUSE.

Section 922(g)(1), as applied here, exceeds Congress' Commerce Clause power under *United States v. Lopez*, 514 U.S. 549 (1995), *United States v. Morrison*, 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000).

Three points are clear from these cases and their progeny. First, under *Lopez*, Curtis Squire's mere possession of a firearm in his home that, at some point in the past, moved from one state to another did not "substantially affect" interstate commerce. *Lopez*, 514 U.S. at 567; *see, e.g., United States v. Hemani*, 146 S. Ct. 1677, 1695 (2026) (Thomas, J., concurring) ("[O]ur precedents suggest that merely possessing a gun does not have a 'substantial effect' on interstate commerce.").

Second, under *Lopez* and *Morrison*, Squire's possession cannot be aggregated with the unlawful possession of firearms by other felons, because that possession is neither commercial nor economic activity. As *Lopez* put it, "The possession of a

gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." 514 U.S. at 567; *see Morrison*, 529 U.S. at 613 ("While we need not adopt a categorical rule against aggregating the effects of any noneconomic activity in order to decide these cases, thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature."); *see also Hemani*, 146 S. Ct. at 1695 (Thomas, J., concurring) ("[T]he Court has emphatically rejected the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.") (quotation omitted); *United States v. Bonner*, 159 F.4th 338, 342 (5th Cir. 2025) (Willett, J., joined by Duncan, J., concurring) ("[A]ggregation is ordinarily appropriate only when the underlying activity is economic--and firearm possession is not."); *cf. Gonzales v. Raich*, 545 U.S. 1, 17 (2005) (Congress may "regulate purely local activities that are part of an *economic* class of activities that have a substantial effect on interstate commerce") (emphasis added).

Third, under *Jones* and other cases, a "jurisdictional hook"--the interstate commerce element of § 922(g)(1)--does not alone establish a "substantial effect" on interstate commerce; it does so only if the conduct required to satisfy that element has such an effect. *Jones*, 529 U.S. at 859 (jurisdictional element in federal arson statute satisfied only if target property is "currently used in commerce or in an

activity affecting commerce"); *see, e.g.*, *United States v. Patton*, 451 F.3d 615, 632 (10th Cir. 2006) ("The ultimate inquiry is whether the prohibited activity has a substantial effect on interstate commerce, and the presence of a jurisdictional hook, though certainly helpful, is neither necessary nor sufficient."); *United States v. Holston*, 343 F.3d 83, 89 (2d Cir. 2003) (same); *United States v. Rodia*, 194 F.3d 465, 473 (3d Cir. 1999) (same).

What the Court held in *Lopez* applies even more forcefully here: if possession of a gun in a local school zone does not substantially affect interstate commerce, possession of a gun in one's own home cannot possibly do so.

## II. *SCARBOROUGH* DOES NOT CONTROL THE COMMERCE CLAUSE ANALYSIS.

That straightforward analysis would resolve this case but for *Scarborough v. United States*, 431 U.S. 563 (1977), which interpreted 18 U.S.C. App. § 1202(a). Absent *Scarborough*, the Court could apply standard tools of statutory interpretation, including the doctrine of constitutional avoidance, *see, e.g.*, *Skilling v. United States*, 561 U.S. 358, 405-06 (2010), to find the jurisdictional element requires possession with a present connection to ongoing interstate commerce (as *Jones* did and as Louisiana urges in its amicus brief). Or, if the Court concluded that § 922(g)(1) does not permit that interpretation, it could hold the statute unconstitutional as applied.

But panels of this Court construing the jurisdictional element of § 922(g)(1) have considered themselves bound by *Scarborough*'s interpretation of § 1202(a).

*See, e.g., United States v. Fitzhugh*, 984 F.2d 143, 146 (5th Cir. 1993). And panels have concluded as well that *Scarborough* implicitly decided the Commerce Clause question presented here. *See, e.g., United States v. Kuban*, 94 F.3d 971, 973 n.4 (5th Cir. 1996) (citing *United States v. Rawls*, 85 F.3d 240, 243 (5th Cir. 1996) (Garwood, Wiener, and Garza, JJ., specially concurring)). The first of these conclusions, if correct, would foreclose application of the constitutional avoidance doctrine and other canons of statutory interpretation to limit the scope of the interstate commerce element of § 922(g)(1). The second would defeat a Commerce Clause challenge.

Neither conclusion is correct; the Court has erred in applying *Scarborough* to § 922(g)(1). The Louisiana amicus brief explains persuasively the differences between § 1202(a) (the statute interpreted in *Scarborough*) and § 922(g)(1). The Louisiana brief demonstrates that *Scarborough*'s interpretation of § 1202(a) does not control--or even inform--this Court's interpretation of § 922(g)(1). NACDL joins that statutory analysis and agrees with Louisiana that the Court can resolve this case as a matter of statutory interpretation. But we focus here on what *Rawls* characterized as the "implicit[]" constitutional holding of *Scarborough*.

For several reasons, *Scarborough* cannot be read as deciding the constitutional question presented here. First, and most obviously, "[t]he Court's holding in *Scarborough* was statutory, not constitutional." *United States v. Seekins*, 52 F.4th 988, 991 (5th Cir. 2022) (Ho, J., joined by Smith and Engelhardt, JJ., dissenting from

denial of rehearing en banc), *cert. denied*, 143 S. Ct. 2668 (2023); *see, e.g., Alderman v. United States*, 562 U.S. 1163, 1163, 1165-66 (2011) (Thomas, J., dissenting from denial of certiorari) (same); *Bonner*, 159 F.4th at 342 (Willett, J., joined by Duncan, J., concurring) (same); *Kuban*, 94 F.3d at 976 (DeMoss, J., dissenting) (same). The question on which the *Scarborough* Court granted certiorari was purely statutory. The Court's analysis was purely statutory. The Court decided no constitutional questions, implicitly or otherwise. As the Court has made clear, "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 170 (2004) (quotation omitted), *quoted in Bonner*, 159 F.4th at 342 (Willett, J., joined by Duncan, J., concurring).

Second, there is a "fundamental inconsistency between *Lopez* and *Scarborough*." *Seekins*, 52 F.4th at 991 (Ho, J., joined by Smith and Engelhardt, JJ., dissenting from denial of rehearing en banc). Most obviously, *Lopez* identifies three categories of enactment that fall within Congress' Commerce Clause power. Only the third category--statutes that regulate "those activities that substantially affect interstate commerce," *Lopez*, 514 U.S. at 559--is relevant here, and § 922(g)(1) does not meet that standard under the circumstances of this case. *Scarborough* did not apply the *Lopez* framework (which would not appear for another eighteen years) or

make any effort to justify § 1202(a) under any Commerce Clause analysis recognizable after *Lopez*, *Morrison*, and their progeny.

Read as an implicit constitutional ruling, *Scarborough* is likewise out of step with later Supreme Court cases outside the Commerce Clause context. In recent years, the Court has repeatedly "insist[ed] on a clear indication that Congress meant to reach purely local crimes, before interpreting [a] statute's expansive language in a way that intrudes on the police power of the States." *Bond v. United States*, 572 U.S. 844, 860 (2014); *see, e.g., Ciminelli v. United States*, 598 U.S. 306, 315 (2023) (rejecting "right to control" mail and wire fraud theory in part because it "makes a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law"); *Cleveland v. United States*, 531 U.S. 12, 24 (2000) (declining to extend the mail fraud statute to "a wide range of conduct traditionally regulated by state and local authorities"); *Jones*, 529 U.S. at 858 (same; interpreting federal arson statute); *Williams v. United States*, 458 U.S. 279, 290 (1982) (construing federal criminal statute narrowly in part because the case involved "a subject matter that traditionally has been regulated by state law").

These decisions, like *Lopez*, *Morrison*, and *Jones*, respect our federal system of government. The Framers created a national government of "enumerated powers" and reserved general police powers to the states. *Lopez*, 514 U.S. at 552. This structure "secures to citizens the liberties that derive from the diffusion of sovereign

power." *Bond v. United States*, 564 U.S. 211, 221 (2011) (quotation omitted). As the Supreme Court explained, "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). Federalism thus "protects the liberty of all persons within a State by ensuring that laws enacted in excess of delegated governmental power cannot direct or control their actions. By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power. When government acts in excess of its lawful powers, that liberty is at stake." *Bond*, 564 U.S. at 222 (citation omitted).

Federalism also promotes innovation and decision-making responsive to local circumstances, rather than one-size-fits-all dictates from a distant national government. "The federal structure allows local policies more sensitive to the diverse needs of a heterogeneous society, permits innovation and experimentation, enables greater citizen involvement in democratic processes, and makes government more responsive by putting the States in competition for a mobile citizenry." *Bond*, 564 U.S. at 221; *see Gregory*, 501 U.S. at 458; *Bonner*, 159 F.4th at 343 (Willett, J., joined by Duncan, J., concurring).

Expanding Congress' Commerce Clause power to cover any conduct--even purely passive conduct such as possession of a firearm in one's home--that somehow involves an item or a component of an item that has at some point in the past moved from one state to another defeats both purposes of the federal system. First, such congressional police power (for that is what it amounts to[2]) diminishes liberty by empowering two levels of government (federal and state) to punish individuals for virtually any conduct deemed criminal. Letting two sovereigns tag-team an individual undermines personal liberty, contrary to a core purpose of federalism.

Giving Congress general police power also discourages innovation and democratic participation. Every state has laws that prohibit possession of firearms by felons. But the state laws vary--some are more stringent than § 922(g)(1), some are less so, and some are harsher in some respects and more lenient in others. Some states, for example, prohibit firearm possession by persons convicted of certain misdemeanors, an approach that goes beyond § 922(g)(1).[3] Vermont, by contrast,

---

[2] *See, e.g., United States v. Williamson*, 170 F.4th 435, 438 (5th Cir. 2026) (Willett, J., joined by Wilson, J., concurring) ("If mere possession sufficed, the Commerce Clause would quietly--but completely--confer the very general police power the Constitution withholds from Congress.").

[3] *See, e.g.,* Cal. Penal Code § 29805; Conn. Gen. Stat. § 53a-217(a); 430 Ill. Comp. Stat. § 65/4(a)(2)(viii); 730 Ill. Comp. Stat. § 5/5-6-3(a)(3); N.J. Stat. Ann. § 2C:58-3(c)(1); N.Y. Penal Law §§ 265.00(17), 265.01(4), 265.02(1), (5). Section 922(g)(9) of Title 18 prohibits firearm possession by persons convicted of "a misdemeanor crime of domestic violence," but the statute does not otherwise apply to persons convicted of misdemeanors.

prohibits firearm possession by persons convicted of violent offenses, but not non-violent offenses, an approach less extensive than § 922(g)(1) in some respects (non-violent felonies generally do not bar firearm possession under Vermont law but do under § 922(g)(1)) and more extensive in others (violent misdemeanors generally bar firearm possession under Vermont law but, except for misdemeanor domestic violence offenses, do not under § 922(g)).[4] Montana prohibits firearm possession by persons convicted of offenses involving dangerous weapons or certain felony sexual offenses but not otherwise.[5] Idaho prohibits firearm possession by persons convicted of some, but not all, felonies.[6] Pennsylvania prohibits firearm possession for persons convicted of some but not all felonies and for specified non-felony offenses, an approach that is both more and less stringent than § 922(g)(1).[7] States similarly have varying approaches to the type of firearms that cannot be possessed, the duration of the ban on possessing firearms, and the means by which the right to possess firearms may be restored.[8]

---

[4] *See* 13 V.S.A. §§ 4017, 5301(7).

[5] *See* Mont. Code Ann. §§ 45-8-313(1), 46-18-221.

[6] *See* Idaho Code Ann. §§ 18-310(2), 18-3316(1), (2).

[7] *See* 18 Pa. Cons. Stat. § 6105(a)(1), (b), (c)(2), (3), (9), (10).

[8] *See* https://ccresourcecenter.org/state-restoration-profiles/chart-1-loss-and-restoration-of-civil-rights-and-firearms-privileges/ (chart of state laws as of December 2021).

These varied local approaches are both expected and desirable in a federal system designed to be "sensitive to the diverse needs of a heterogeneous society," to "permit[] innovation and experimentation," and to "enable[] greater citizen involvement in democratic processes." *Bond*, 564 U.S. at 221. None of these varied local approaches matters, however, if a federal hegemon can substitute its views for a state's democratic choice. The federal criminal code has nationwide effect and--as happened here--federal prosecutors can take over any case for any reason or no reason. And federal prosecutors, unlike most of their state counterparts, are unelected, further removing federal criminal law from the democratic process. Read as a constitutional decision, therefore, *Scarborough* undermines the federalism that the Supreme Court has spent the last three decades reinforcing.

* * * *

Because *Scarborough* did not address the constitutionality of § 922(g)(1), and because any "implicit" constitutional determination cannot be reconciled with later Supreme Court cases or fundamental principles of federalism, the en banc Court should find that decision does not restrict its ability to interpret the statute or decide its constitutionality. Unconstrained by *Scarborough*, the Court should hold that the conduct at issue here does not satisfy § 922(g)(1)'s jurisdictional element or, if it does, that the statute as applied exceeds Congress' power under the Commerce Clause.

## III. THE DISSENT'S CONCERNS CAN BE READILY ALLEVIATED.

Judge Higginson's dissent to the grant of rehearing en banc raises concerns about the potential effects of a ruling for Squire. *See United States v. Squire*, 182 F.4th 481, 482 (5th Cir. 2026) (Higginson, J., dissenting from grant of rehearing en banc). We turn to those concerns.

The dissent warns that "[f]inding that this statute, with an explicit interstate commerce nexus, must fall would mark the start of a new, severely contracted Commerce Clause era." *Id*. at 483. The dissent adds that a finding that § 922(g)(1) exceeds Congress' power under the Commerce Clause "would have massive import for federal law," ranging from "felons from the other eleven circuits now flood[ing] the Gulf Coast to rearm themselves" to the effect on federal statutes criminalizing possession of child pornography, explosive materials, and biological weapons, and even on laws governing "financial transactions," "intellectual property," and "endangered species." *Id*. at 483-84.

Three considerations alleviate these concerns. First, as noted above, other circuits have recognized that an "explicit interstate commerce nexus" does not immunize a federal statute from review to determine if it falls within Congress' Commerce Clause power. *See, e.g., Patton*, 451 F.3d at 632; *Holston*, 343 F.3d at 89; *Rodia*, 194 F.3d at 473. Conducting such review here will not begin a "new,

severely contracted Commerce Clause era"; it will merely continue the mode of analysis that *Lopez* requires and other circuits have adopted.

Second, it is unlikely that "felons from the other eleven circuits" will "flood the Gulf Coast to rearm themselves" if this Court rules for Squire. Every state in this Circuit (and, for that matter, every state in every other circuit) has a felon-in-possession criminal statute. Thus, the felons flooding in would risk prosecution in the state where they acquired the firearm, in the state to which they traveled with the firearm, and in every state in between. In addition, if this Court holds § 922(g)(1) beyond the commerce power as applied to entirely local possession in the home, the out-of-Circuit felons might still satisfy the interstate commerce element and the *Lopez* "substantial effect" standard as they cross state lines with their newly acquired firearms. And such persons would almost certainly violate § 922(g)(1)'s unchallenged prohibition on felons "transport[ing] [firearms] in interstate or foreign commerce."

Third, a determination that § 922(g)(1) as applied exceeds Congress' Commerce Clause power is unlikely to have much impact on other federal statutes or on law enforcement generally--and what impact there is will have the beneficial effect of reinforcing the federal system of diffused government power and local democratic innovation and control. Squire possessed a firearm in his home, a non-economic, entirely local act; the only connection to interstate commerce is the

firearm's movement from one state to another at some point in the past. Few federal cases will have such an attenuated connection to interstate commerce--and if there are such cases, our federal system requires that they be dismissed and left to the states to prosecute.

## CONCLUSION

The Court should either interpret § 922(g)(1)'s interstate commerce element not to extend to the purely local conduct at issue here or, if it finds such an interpretation untenable, hold that the statute as applied exceeds Congress' power under the Commerce Clause.

DATED: September 10, 2026

Respectfully submitted,

/s/ John D. Cline

John D. Cline
Gerald H. Goldstein
Cynthia H. Orr
Attorneys for Amicus Curiae
NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief of Amicus Curiae National Association of Criminal Defense Lawyers is proportionately spaced, has a typeface of 14 points, and contains 3665 words.

*/s/ John D. Cline*
John D. Cline

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of September, 2026, a copy of the foregoing was filed using the Court's ECF system, which will serve counsel for all parties.

*/s/ John D. Cline*
John D. Cline