**No. 25-30324**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

United States of America,
*Plaintiff-Appellee*,

v.

Curtis Squire,
*Defendant-Appellant*.

---

On Appeal from the United States District Court
for the Eastern District of Louisiana

---

# BRIEF *AMICUS CURIAE* OF GUN OWNERS OF AMERICA, GUN OWNERS FOUNDATION, GUN OWNERS OF CALIFORNIA, FIREARMS REGULATORY ACCOUNTABILITY COALITION, TENNESSEE FIREARMS ASSOC., TENNESSEE FIREARMS FDN., VIRGINIA CITIZENS DEF. LEAGUE, VIRGINIA CITIZENS DEF. FDN., AMERICA'S FUTURE, U.S. CONSTITUTIONAL RIGHTS LEGAL DEF. FUND, AND CONSERVATIVE LEGAL DEF. AND EDUCATION FUND, IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL

---


J. Mark Brewer
Johnson City, TX 78636

John I. Harris III
Nashville, TN 37203

Rick Boyer
Lynchburg, VA 24506

William J. Olson*
Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Ave. West, Ste. 4
Vienna, VA 22180-5615
(703) 356-5070
wjo@mindspring.com
*Counsel of Record

September 10, 2026

Case No. 25-30324

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CURTIS SQUIRE,

Defendant-Appellant.

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Curtis Squire, Defendant-Appellant.

United States of America, Plaintiff-Appellee.

Gun Owners of America, Gun Owners Foundation, Gun Owners of California, Firearms Regulatory Accountability Coalition, Tennessee Firearms

Association, Tennessee Firearms Foundation, Virginia Citizens Defense League, Virginia Citizens Defense Foundation, America's Future, U.S. Constitutional Rights Legal Defense Fund, Conservative Legal Defense and Education Fund, *Amici Curiae*.

William J. Olson, Robert J. Olson, J. Mark Brewer, John I. Harris, III, and Rick Boyer are counsel for *Amici Curiae*.

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(c), and 5th Circuit Rule 28.2.1, it is hereby certified that *amici curiae* Gun Owners of America, Gun Owners Foundation, Gun Owners of California, Firearms Regulatory Accountability Coalition, Tennessee Firearms Association, Tennessee Firearms Foundation, Virginia Citizens Defense League, Virginia Citizens Defense Foundation, America's Future, U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund are non-stock, nonprofit entities, have no parent companies, and no person or entity owns them or any part of them.

*/s/ William J. Olson*
William J. Olson
Attorney of Record for *Amici Curiae*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTEREST OF THE *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT

I. The Original Public Meaning of the Commerce Clause — to Establish a Free and Common Market among the Several States — Provides No Support for the District Court's Ruling. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. The Supreme Court's Decision in *Scarborough v. United States* Interpreting 18 U.S.C. § 1202(a) Does Not Control this Court's Interpretation of 18 U.S.C. § 922(g), but the Case Should Not Be Decided by Statutory Interpretation. . . . . . . . . . . . . . . . . . . . . . . . 10

III. The Governing Supreme Court Decision Here Is *Lopez*, Not *Scarborough* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV. Returning to the Original Public Meaning of the Constitution's Enumerated Powers Would Avoid Problems that Have Been Caused by the Federalization of Criminal Law. . . . . . . . . . . . . . . . . . 15

   A. The Federal Government Was Never Intended to Have an Important Role in Criminalizing Behavior. . . . . . . . . . . . . . 15

   B. The De-federalization of Crime Solves Numerous Problems . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES


**CONSTITUTION**

Article I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
Article I, Section 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Article I, Section 8, clause 5 . . . . . . . . . . . . . . . . . . . . . . . . . 16
Article I, Section 8, clause 6 . . . . . . . . . . . . . . . . . . . . . . . . . 16
Tenth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES**

Crimes Act of April 30, 1790 . . . . . . . . . . . . . . . . . . . . . . . . . 16
Firearms Owners' Protection Act . . . . . . . . . . . . . . . . . . . . . . . 10
Gun-Free School Zones Act of 1990 . . . . . . . . . . . . . . . . . . . . . 12
Gun Control Act of 1968 . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12
National Firearms Act of 1934 . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
One Big Beautiful Bill Act of 2025 . . . . . . . . . . . . . . . . . . . . . 6, 7
Omnibus Crime Control and Safe Streets Act of 1968 . . . . . . . . . . . . . . 2, 12
18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . 2-5, 9-11, 20
18 U.S.C. § 922(q) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14
18 U.S.C. § 924(a)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
18 U.S.C. § 1201(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
18 U.S.C. § 1202(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**CASES**

*Gibbons v. Ogden*, 22 U.S. 1 (1824) . . . . . . . . . . . . . . . . . . . . . 8
*Lopez v. United States,* 514 U.S. 549 (1995). . . . . . . . . . . . . . . . 12,14
*Marbury v. Madison*, 5 U.S. 137 (1803) . . . . . . . . . . . . . . . . . . . 14
*Range v. Att'y Gen. U.S.,* 124 F.4th 218 (3d Cir. 2024) . . . . . . . . . . . . 5
*Scarborough v. United States,* 431 U.S. 563 (1977) . . . . . . . . . . . . . 10-14
*Silencer Shop Found. v. BATFE*, 2026 U.S. Dist. LEXIS 174125
(N.D. Tex. Aug. 5, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
*United States v. Cockerham*, 162 F.4th 500 (5th Cir. 2025) . . . . . . . . . . . 5
*United States v. Hembree*, 165 F.4th 909 (5th Cir. 2026) . . . . . . . . . . . . 5
*United States v. Seekins*, 2022 U.S. App. LEXIS 23746 (5th Cir. 2022) . . . 2, 3
*United States v. Williams*, 113 F.4th 637 (6th Cir. 2024) . . . . . . . . . . . . 5

**MISCELLANEOUS**

American Bar Association Task Force, Federalization of
Criminal Law (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18
Federalist No. 42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Federalist No. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Felisha Bull, "GOA to File 'One Big Beautiful Lawsuit' Against
NFA Registry as 'One Big Beautiful Bill' Heads to President's Desk,"
*Gun Owners of America* (July 3, 2025) . . . . . . . . . . . . . . . . . . . . . . 6
Bureau of Justice Statistics, "Survey of State Procedures Relating to Firearm
Sales, Midyear 200 (Apr. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Dennis E. Curtis, "The Effect of Federalization on the Defense Function,"
543 Annals Am. Acad. Pol. & Soc. Scl. 85 (1996) . . . . . . . . . . . . . . 18
Richard Posner, An Affair of State, Harvard University Press (1999) . . . . . . 19
Jim Smith, "Petty Pusher Goes Out Big Time," *Philadelphia Daily News*
(July 17, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
"State-Level Firearms-Safety Laws at the Turn of the 21st Century,"
American Journal of Preventive Medicine 2026:71(4):
108432 (2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## INTEREST OF THE *AMICI CURIAE*[1]

*Amici curiae* Gun Owners of America, Gun Owners Foundation, Gun Owners of California, Firearms Regulatory Accountability Coalition, Tennessee Firearms Association, Tennessee Firearms Foundation, Virginia Citizens Defense League, Virginia Citizens Defense Foundation, America's Future, U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund are nonprofit organizations, exempt from federal income taxation under Section 501(c)(3), (c)(4), or (c)(6) of the Internal Revenue Code ("IRC").

The nonprofit *amici*, *inter alia*, participate in the public policy process, including conducting research, and informing and educating the public on the proper construction of state and federal constitutions, as well as statutes related to the rights of citizens, and questions related to human and civil rights secured by law.

---

[1] It is hereby certified that all parties consented to the filing of this brief *amicus curiae*; that no counsel for a party authored this brief in whole or in part; and that no person other than these *amici curiae*, their members, or their counsel made a monetary contribution to its preparation or submission.

## STATEMENT OF THE CASE

Appellant-Defendant Curtis Squire was indicted by a Grand Jury on a one-count Indictment for being a felon in possession of a firearm in violation of the following two provisions of the Omnibus Crime Control and Safe Streets Act of 1968 as amended by the Gun Control Act of 1968 and subsequently:

- 18 U.S.C. § 922(g)(1): "It shall be unlawful for any person — (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

- 18 U.S.C. § 924(a)(8): "Whoever knowingly violates subsection (d) or (g) of section 922 shall be fined under this title, imprisoned for not more than 15 years, or both."

Squire argued that, *inter alia*, "the statute exceeds Congress's power to regulate under the Commerce Clause of the Constitution." *United States v. Squire*, 2024 U.S. Dist. LEXIS 222825 (E.D. La. 2024) ("*Squire*") at *2. The Commerce Clause grants Congress the power: "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes…."

The district court ruled that Appellant's Commerce Clause challenge was foreclosed by the Fifth Circuit's unpublished decision in *United States v. Seekins*, 2022 U.S. App. LEXIS 23746 (5th Cir. 2022). That decision concluded that:

"§ 922(g) can be constitutionally applied where the 'in or affecting commerce' element is proved by showing the *firearm* had previously traveled across state lines" at any point in its existence "without regard to the defendant's conduct." *Id.* at *6. The *Seekins* decision further explained, "'There is no additional requirement that to apply the law constitutionally, the Government must prove some economic activity beyond the interstate movement of the weapon.'" *Id.* There was no further discussion of the Commerce Clause issue in *Seekins*.

On appeal, a panel of this Court affirmed the district court's denial of Appellant's motion to dismiss based on the Commerce Clause in a footnote, finding that it was foreclosed by this Court's prior rulings. *See United States v. Squire*, 177 F.4th 614, 617, n.1 (5th Cir. 2026). However, the panel's decision was vacated when this Court granted en banc review.

Appellant's en banc brief identifies two issues for review:

> 1. Whether 18 U.S.C. § 922(g)(1)'s prohibition on the possession of a firearm by a felon exceeds Congress's authority under the Commerce Clause, either facially or as applied to the purely intrastate possession of a firearm in this case.
>
> 2. Whether, as a matter of constitutional avoidance, this Court should overturn its precedent holding that 18 U.S.C. § 922(g)(1)'s "in or affecting commerce" element is satisfied whenever a person possesses a firearm that previously crossed state lines.

## STATEMENT

Dissenting from the order granting rehearing en banc, Judge Higginson lamented that the rehearing could "imperil much of the United States Code." *United States. v. Squire*, 182 F.4th 481, 482 (5th Cir. July 20, 2026) (Higginson, J., dissenting). Thus, his concern was not limited to the possibility that 18 U.S.C. § 922(g)(1) would be declared unconstitutional. Rather, his concern that the multitude of federal criminal laws designed to restrict the conduct of Americans, which are grounded in an expansive view of Congressional power under the Commerce Clause, could be jeopardized by any re-examination of the Commerce power. Fortunately, his was not the view of most members of this Court. The Court's duty now is to properly construe the limits of the Commerce power, not to achieve a ruling that is minimally disruptive. Particularly when a federal criminal law establishes a penalty of up to 15 years in federal prison, federal courts should be willing to examine well-grounded challenges and rule as the Constitution requires, even in areas where the issue has been considered to be "settled." These *amici* appreciate the decision by this Court to grant en banc review to address Appellant's serious constitutional challenge.

Even if this Court's ruling should "imperil much of the United States Code," as Judge Higginson feared, there would still be no cause for alarm. For

example, there would remain an abundance of laws on the books governing firearms. By one report, there were 2,367 state firearms laws across the 50 states in 2023, up from 1,771 in 1999.[2] Additionally, there are many city and county ordinances.

Even with respect to the subject matter of § 922(g)(1), the Department of Justice reports that "49 States prohibit[] firearm purchase or possession by at least some categories of felons."[3] So invalidation of the challenged statute would not somehow rend the social fabric, especially as numerous recent decisions have granted as-applied victories to felon-in-possession challenges. *See, e.g., United States v. Hembree*, 165 F.4th 909 (5th Cir. 2026) (Higginson, J.); *United States v. Cockerham*, 162 F.4th 500 (5th Cir. 2025); *Range v. Att'y Gen. U.S.*, 124 F.4th 218 (3d Cir. 2024); *see also United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024) (recognizing the viability of as-applied challenges to Section 922(g)(1) and instructing district courts to "make fact-specific dangerousness determinations.").

---

[2] *See* "State-Level Firearm-Safety Laws at the Turn of the 21st Century," American Journal of Preventive Medicine 2026:71(4): 108432 (2026).

[3] *See* Bureau of Justice Statistics, "Survey of State Procedures Relating to Firearm Sales, Midyear" (Apr. 2020).

Recently, the constitutional predicate for another primary federal firearms law has come under review, and the sky has not fallen. The Article I justification for the National Firearms Act of 1934 ("NFA") was recently challenged, and found wanting. In *Silencer Shop Found. v. BATFE*, 2026 U.S. Dist. LEXIS 174125 (N.D. Tex. Aug. 5, 2026), a case brought by some of these *amici*, including Gun Owners of America and Firearms Regulatory Accountability Coalition, in the U.S. District Court for the Northern District of Texas recently declared significant portions of the NFA to be unconstitutional as applied to certain firearms (*i.e.*, suppressors, short-barreled rifles, short-barreled shotguns, AOWs) whose NFA excise taxes had been repealed in the One Big Beautiful Bill Act of 2025 ("OBBBA"). The *Silencer Shop* litigation occurred after Congress's repeal of the NFA's excise tax for certain firearms via budget reconciliation, effective January 1, 2026.[4] Despite the repeal, Congress left the corresponding registration requirements intact, establishing the predicate for the *Silencer Shop* challenge to the remaining NFA registration provisions on Article I grounds. Striking certain provisions, the district court recognized that Congress originally "enacted the challenged NFA provisions under the Taxing Clause

[4] Felisha Bull, "GOA to File 'One Big Beautiful Lawsuit' Against NFA Registry as 'One Big Beautiful Bill' Heads to President's Desk," *Gun Owners of America* (July 3, 2025).

only," and NFA registration "cannot be retroactively justified under another power that Congress never invoked…." *Silencer Shop* at *6. Thus, because "today's NFA does not generate any revenue" from newly "untaxed firearms," the NFA's vestigial registration requirements "exceed[ed] Congress's enumerated powers" and violated Article I. *Id.* at *5. In other words, the OBBBA "eliminated the constitutional basis for the regulations that formerly supported the taxes for [NFA] firearms." *Id.* at *6. That ruling remains in effect today, as the U.S. Department of Justice declined to seek a stay of the district court's well-reasoned decision. Countless thousands of formerly NFA-regulated firearms are being transferred across the country without NFA paperwork and registration, and the world has gone on. Likewise, tomorrow will still come even if this Court were to invalidate 18 U.S.C. § 922(g)(1) on Commerce Clause grounds.

## ARGUMENT

### I. THE ORIGINAL PUBLIC MEANING OF THE COMMERCE CLAUSE — TO ESTABLISH A FREE AND COMMON MARKET AMONG THE SEVERAL STATES — PROVIDES NO SUPPORT FOR THE DISTRICT COURT'S RULING.

In Federalist No. 42, James Madison explained that: "[a] very material object of [the Commerce Clause] was the relief of the States which import and export through other States, from the improper contributions levied on them by

the latter." The goal was to "provide for the harmony and proper intercourse among the States." The district court's finding that Appellant's conviction could be supported as an exercise of the Commerce Clause based on some prior interstate event demonstrates how far courts have strayed from that Clause's original public meaning. Indeed, many have concluded that under a long line of Commerce Clause cases, the federal government has been changed from a government of enumerated powers to one of general powers.

In contrast, two centuries ago, in *Gibbons v. Ogden*, 22 U.S. 1 (1824), Chief Justice John Marshall established principles for courts to apply when analyzing enumerated powers cases:

> We know of no rule for construing the extent of such powers, other than is given by the **language** of the instrument which confers them, taken in connexion with the **purposes** for which they were conferred. [*Id.* at 189 (emphasis added).]

Sadly, enumerated powers cases are no longer decided in this fashion, but Liberty University Law School Professor Jeffrey C. Tuomala has carefully explained how Marshall's principles should apply in Commerce Clause cases:

> the **subject matter** of a statute must align with the subject matter of the Constitution's text, i.e., it must "regulate Commerce … among the several States." U.S. Const. art. 1, § 8, cl. 3. If the subject matter of the statute regulates interstate commerce, the Court must then determine whether the **object** (i.e., purpose) of the statute aligns with the object of the Commerce Clause. The object of the

> Commerce Clause, stated generally, is **to establish a free and common market among the several states**. Congress is limited to regulating the subject of interstate commerce for the object of ensuring free trade.[5]

Section 922(g)(1) fits neither requirement. It certainly cannot be said that the nation's Commerce Clause jurisprudence has achieved Madison's vision for the national government set out in Federalist No. 45, that "[t]he powers delegated by the proposed Constitution … are few and defined."

If Marshall's method of analysis was applied here, this Court would need to reverse the district court ruling because Congress had no Commerce Clause (or any other) constitutional authority to create the crimes which Appellant was charged with committing.

The ultimate judicial authority to return to these first principles may be vested in the U.S. Supreme Court, whose decisions have strayed far from the original meaning. Nevertheless, they are set out here in the hope that they can establish a baseline for properly understanding the narrow scope of the powers which the Framers bestowed upon Congress through the Commerce Clause, and

---

[5] Brief of *Amicus Curiae* Professor Jeffrey C. Tuomala in Support of Petitioners, *Ortiz-Diaz, et al. v. United States*, U.S. Supreme Court, No. 20-1735 at 2-3 (July 8, 2021) (emphasis added).

broad scope of the powers which were reserved to the states and to the people under the Tenth Amendment.

## II. THE SUPREME COURT'S DECISION IN *SCARBOROUGH V. UNITED STATES* INTERPRETING 18 U.S.C. § 1202(a) DOES NOT CONTROL THIS COURT'S INTERPRETATION OF 18 U.S.C. § 922(g), BUT THE CASE SHOULD NOT BE DECIDED BY STATUTORY INTERPRETATION.

The Supreme Court's decision in *Scarborough v. United States,* 431 U.S. 563 (1977) interpreted language in what was then 18 U.S.C. § 1202(a), which applied to a felon "who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act…." Under that provision the Supreme Court approved an instruction under which the government only needed to show "that the firearm possessed by the convicted felon travelled at some time in interstate commerce." *Scarborough* at 568. In 1986, in the Firearms Owners' Protection Act, § 1202 was repealed, and § 922(g)(1) was adopted using meaningfully different language, now making it unlawful:

> to **ship or transport** in interstate or foreign commerce, or **possess** in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. [Emphasis added.]

Despite this change to employ contemporaneous terms, federal courts have continued to apply *Scarborough's* minimalist "traveled at some time" rule to describe the type of "possession" required to establish a Commerce Clause predicate for the violation of § 922(g)(1).

In its *amicus* brief in support of Defendant-Appellant, Louisiana asserts its belief that it is possible, and actually preferable, to resolve this case by giving the new statutory language a fresh statutory interpretation, concluding that Congress no longer intended to criminalize possession of a firearm that once upon a time, long before, had "traveled at some time" in interstate commerce. Louisiana contends the "best way to remedy the … problem" is "not to strike down" § 922(g)(1) as unconstitutional. It is instead to hold, as a matter of statutory interpretation, "that a present connection to ongoing interstate commerce" is required.[6]

These *amici* strongly disagree with the position advanced by *amicus* State of Louisiana. Plaintiff-Appellee United States urges that the interstate commerce predicate be minimal, giving Congress expansive power to regulate all aspects of daily life. In contrast, Louisiana urges a more significant predicate — a "present

[6] Brief of the State of Louisiana as *Amicus Curiae* in Support of Appellant and Reversal (Sept. 3, 2026) at 5-6, 11..

connection" to commerce, which would result in a narrower scope of Congressional power. But either way, it is not a constitutional exercise of the Commerce power. It is permitted neither under the original public meaning of the Commerce Clause nor the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995).

## III. THE GOVERNING SUPREME COURT DECISION HERE IS *LOPEZ*, NOT *SCARBOROUGH*.

*Scarborough*, decided in 1977, upheld the constitutionality of 18 U.S.C. §§ 1201(1) and 1202(a), enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Gun Control Act of 1968, which was later repealed and enacted as 18 U.S.C § 922(g)(1) in a meaningfully different form. *Lopez*, decided in 1995, ruled that 18 U.S.C. § 922(q), the Gun-Free School Zones Act of 1990, exceeded Congress's power under the Commerce Clause. Chief Justice Rehnquist's opinion for the Court in *Lopez* should be considered controlling here, not the earlier *Scarborough* decision.

The *Scarborough* Court appeared to place great weight on Congressional findings that firearms possession by felons somehow affected interstate commerce.

> In the findings at the beginning of Title VII, Congress expressly declared that "the receipt, **possession**, or transportation of a firearm

> by felons… constitutes… a burden on commerce or threat affecting the free flow of commerce," 18 U.S.C. App. § 1201(1). It then implemented those findings by prohibiting possessions "in commerce and affecting commerce." [*Scarborough* at 571 (emphasis added).]

The *Scarborough* Court also sought to give effect to Congress's objective without any consideration of limitations on its power under the Commerce Clause;

> Congress sought to rule broadly - to keep guns out of the hands of those who have demonstrated that "they may not be trusted to possess a firearm without becoming a threat to society. There is simply no indication of any concern with either the movement of the gun or the possessor or with the time of acquisition. [*Scarborough* at 573.]

Lastly, the Petitioner in *Scarborough* never challenged the power of Congress to criminalize the possession of a firearm under the Commerce Clause, but only deemed it necessary that "the person also carry it in an interstate facility." *Id*. at 575. Even this position was rejected by Justice Marshall, because he limited his focus on what Congress wanted to achieve, rather than rule on what the Constitution required:

> [w]e find no evidence in either the language or the legislative history for such a construction.
>
> More significantly, these theories create serious loopholes in the congressional plan to "make it unlawful for a firearm … to be in the possession of a convicted felon. [*Id*. at 575-76.]

Relying on these Congressional findings, and seeking to give full effect to Congressional intent without the need to evaluate constitutional limitations, the *Scarborough* Court abdicated its duty to say what the law is,[7] and allowed the Congress to determine the scope of the Commerce power.

There were no Congressional findings for the *Lopez* Court to fall back upon, and thus it proceeded directly to determining the original public meaning of the Commerce Clause, as previously interpreted by the Supreme Court. It could find no basis to conclude that possession of a gun by anyone could be criminalized under the Commerce Clause.

> The **possession** of a gun in a local school zone **is in no sense an economic activity that might**, through repetition elsewhere, **substantially affect any sort of interstate commerce**. Respondent was a local student at a local school; there is no indication that he had recently moved in interstate commerce, and there is no requirement that his possession of the firearm have any concrete tie to interstate commerce. [*Lopez* at 567 (emphasis added).]

The most significant difference between 18 U.S.C. § 922(q), struck down in *Lopez*, and 18 U.S.C. § 922(g)(1), under review here, is that the former

---

[7] *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule.")

concerned possession in a school zone by any person, and the latter concerned possession by a felon in any location.

## IV. RETURNING TO THE ORIGINAL PUBLIC MEANING OF THE CONSTITUTION'S ENUMERATED POWERS WOULD AVOID PROBLEMS THAT HAVE BEEN CAUSED BY THE FEDERALIZATION OF CRIMINAL LAW.

### A. The Federal Government Was Never Intended to Have an Important Role in Criminalizing Behavior.

As lawyers and jurists search for the original public meaning of Article I, Section 8, and the degree to which it authorizes Congress to create crimes, it is necessary to put that issue into context. First, we focus on what the Constitution's text informs us about creation of crimes. Article I, Section 8 contains 17 specific enumerated powers to which was added the Necessary and Proper Clause in clause 18. From the vast size of the current Title 18 of the U.S. Code, the layman might believe whatever behavior Congress would want to sanction, it would have authority to sanction. But even putting the Commerce Clause to the side, there is no textual support for an abundance of federal crimes. The Constitution expressly provided for the crimes of counterfeiting, piracy, treason, and a few others. The text indicates that the power to create crimes should not be inferred from the text.

In Article I, Section 8, clause 5, Congress is given the power "[t]o coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures." It might be thought that empowering Congress to "coin Money" would imply the power to criminalize counterfeiting, but the Framers of the Constitution apparently did not believe it did. They followed the power to coin money in clause 5 with clause 6, expressly granting the power to criminalize counterfeiting: "[t]o provide for the Punishment of counterfeiting the Securities and current Coin of the United States." If the framers of the Constitution believed that granting a separate power to punish counterfeiting was required, then that should make us cautious to read the broad authority to establish federal crimes into any Section 8 enumerated power.

Second, the nation's early years tell us much about the plan for handling crime. The first comprehensive statute creating crimes was the Crimes Act of 1790, establishing 23 federal crimes, many of which are expressly authorized by the Constitution's text.[8] In 1998, it was estimated that more than 40 percent of the federal criminal provisions enacted since the Civil War were enacted since 1970.[9] By the 1980s, there were about 3,000 federal crimes, growing to perhaps

---

[8] *See* Crimes Act of April 30, 1790.

[9] *See* American Bar Association Task Force, Federalization of Criminal Law (1998) at 7.

as many as 6,000 crimes now, plus many crimes established by regulation. One of the reasons for this explosive growth has been the desire by Congress to be seen as taking action in response to every problem. Even if there are already state and federal crimes which cover the offense, enacting one crime (sometimes named after the victim of a prior crime) helps Congressmen show they "care" and are "doing something." Another reason for the explosion of federal crimes is the refusal by the federal courts to require Congress to operate within constitutional bounds.

In 1998, the American Bar Association Task Force on the Federalization of Criminal Law published an extensive study on what it called The Federalization of Criminal Law.[10] It began with a review of how crimes were handled in the decades following ratification of the Constitution:

> the states defined and prosecuted nearly all criminal conduct. The federal government confined its prosecutions to less than a score of offenses. As one scholar described these offenses, they generally: "dealt with injury to or interference with the federal government

---

[10] Members of the task force represented a wide variety of views, from former Congressman and Chairman of a House Judiciary Subcommittee on the Courts, Intellectual Property, and the Administration of Justice Robert W. Kastenmeier (D-IL), to former Chief Justice of Alabama and former United States Senator and Governor Howell Heflin (D-AL), and to former United States Attorney General Edwin Meese III (the Task Force's Chair). Louisiana was even represented on the task force through the work of Law Professor John S. Baker, Jr., the Dale E. Bennett Professor of Law at Louisiana State University.

> itself or its programs….. Except in those areas where federal jurisdiction was exclusive (the District of Columbia and the federal territories) federal law did not reach crimes against individuals." [*Id.* at 5.]

**B. The De-federalization of Crime Solves Numerous Problems.**

Of particular relevance to the "federalization of crime" and corresponding erosion of state police power, the task force found:

> In the absence of a distinct federal interest, the decision to prosecute can lack a guiding federal principle. A federal prosecutor is under no legal requirement to state why any particular defendant has been selected to be prosecuted in the federal system and receive a significant federal sentence, and why the many other similar defendants are left to state prosecution. Restraint is essentially left to self-imposed prosecutorial discretion. [*Id.* at 33.]

Ensuring that federal criminal statutes are soundly sourced in the Constitution can lessen the temptation at the state level to "use possible federal prosecution, with its likely harsher punishments, as a threat." *Id.* at 34. To illustrate this threat, the ABA Task Force observed:

> A state drug defendant was offered a guilty plea which would have led to a 4-8 year sentence. When the defendant declined and wanted a trial, a federal drug prosecution was brought, leading to a mandatory life sentence. [*Id.* at 34, n.58 (emphasis added).][11]

---

[11] Citing Jim Smith, "Petty Pusher Goes Out Big Time," *Philadelphia Daily News* (July 17, 1992) and Dennis E. Curtis, "The Effect of Federalization on the Defense Function," 543 Annals Am. Acad. Pol. & Soc. Sci. 85 (1996).

In addressing a different problem, retired Seventh Circuit Judge Richard A. Posner made similar important comments on the state of the federal criminal justice system.

> The machinery of federal criminal investigation and prosecution, with its grand juries, wiretaps, DNA tests, bulldog prosecutors, pretrial detention, broad definition of conspiracy, heavy sentences (the threat of which can be and is used to turn criminals into informants against their accomplices), and army of FBI agents, is very powerful; **there is a fear that fed enough time and money, it can nail anybody**. There is some truth to this, since there are literally thousands of federal criminal laws, many of them at once **broad, vague, obscure, and underenforced**.... [Richard Posner, An Affair of State, Harvard University Press at 87 (1999) (emphasis added).]

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's denial of Squire's motion to dismiss the indictment on the ground that 18 U.S.C. § 922(g)(1) exceeds Congress's authority under the Commerce Clause.

Respectfully submitted,


J. Mark Brewer
209 N. Nugent Ave.
Johnson City, TX 78636

John I. Harris III
SCHULMAN, LEROY &
Benett, P.C.
3310 West End Avenue
Suite 460

William J. Olson*
Robert J. Olson
William J. Olson, P.C.
370 Maple Ave. West, Ste. 4
Vienna, VA 22180-5615
(703) 356-5070
wjo@mindspring.com
September 10, 2026
*Counsel of Record

Nashville, TN 37203

Rick Boyer
Integrity Law Firm
P.O. Box 10953
Lynchburg, VA 24506

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of Gun Owners of America, *et al.* in Support of Defendant-Appellant and Reversal, was made, this 10th day of September, 2026, by the Court's Case Management/ Electronic Case Files system upon the attorneys for the parties.

*/s/ William J. Olson*
William J. Olson
Attorney for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

IT IS HEREBY CERTIFIED:

1. That the foregoing Brief *Amicus Curiae* of Gun Owners of America, et al. in Support of Defendant-Appellant and Reversal complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 4,207 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

_

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as well as Circuit Rule 32.1, because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 21.0.0.194 in 14-point CG Times.

*/s/ William J. Olson*
William J. Olson
Attorney for *Amici Curiae*
Dated: September 10, 2026