IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

# CASE NUMBER 25-30324

---

UNITED STATES OF AMERICA,
*PLAINTIFF-APPELLEE.*,

V.

CURTIS SQUIRE,
*DEFENDANT-APPELLANT.*

---

ON DIRECT APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

---

# BRIEF OF AMICI CURIAE DOMINIC REED, DAVID GUTIERREZ, AND FREDRICK JARRELL PENN, JR., IN SUPPORT OF APPELLANT


JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

J. MATTHEW WRIGHT
ASSISTANT FEDERAL PUBLIC DEFENDER
600 South Tyler Street
Suite 2300
Amarillo, Texas 79101
(806) 324-2370
Matthew_Wright@fd.org

Counsel for Amici Curiae

**Supplemental Statement of Interested Parties**
**for *United States v. Squire*, No. 25-30324**

The following listed persons and entities, beyond those previously disclosed by the parties, have an interest in this amicus brief as contemplated by 5th Cir. R. 29.2:

| | |
|---|---|
| **Amici Curiae** | Dominic Reed<br>David Gutierrez<br>Fredrick Jarrell Penn, Jr. |
| **Counsel for Amici Curiae** | Federal Public Defender for the Northern District of Texas<br>Jason D. Hawkins<br>J. Matthew Wright |

*/s/ J. Matthew Wright*
Counsel for Amici Curiae

## Table of Contents

Supplemental Statement of Interested Parties ............ ii

Table of Authorities ............ iv

Identity, Interest, and Authority to File ............ 1

Introduction and Summary of the Argument ............ 2

Argument ............ 4

I. The Prevailing Interpretation of Section 922(g)'s nexus-with-commerce element nationalizes control over firearms at the expense of federalism and states' rights. ............ 4

A. The Prevailing Interpretation gives the national government complete and perpetual control over nearly every firearm made since 1898 ............ 4

B. The federal government has used the police power provided by the Prevailing Interpretation in a way that directly contradicts and neutralizes the prerogatives and policies adopted by state governments. ............ 7

II. The Prevailing Interpretation is inconsistent with the original public meaning of the unamended Constitution. ............ 9

Conclusion ............ 10

Certificate of Service ............ 12

Certificate of Compliance ............ 12

## Table of Authorities

### Cases

*Bondi v. VanDerStok*,
604 U.S. 458 (2025) .......... 5

*Caron v. United States*,
524 U.S. 308 (1998) .......... 8

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .......... 9, 10

*Logan v. United States*,
552 U.S. 23 (2007) .......... 8

*Scarborough v. United States*,
431 U.S. 563 (1977) .......... 2

*State v. Eberhardt*,
145 So. 3d 377 (La. 2014) .......... 8

*State v. Landry*,
588 So. 2d 345 (La. 1991) .......... 8

*State v. Williams*,
366 So. 2d 1369 (La. 1978) .......... 8

*United States v. Broadnax*,
601 F.3d 336 (5th Cir. 2010) .......... 5

*United States v. Coward*,
151 F. Supp. 2d 544 (E.D. Pa. 2001) .......... 4

*United States v. Lopez*,
514 U.S. 549 (1995) .......... 4, 5

*United States v. Morrison*,
529 U.S. 598 (2000) .......... 7

*United States v. Rawls*,
85 F.3d 240 (5th Cir. 1996) .......... 2

**Constitutional Provisions**

First Amendment .......... 9

Second Amendment .......... 9, 10

Fourth Amendment .......... 9

Article I, § 8 .......... 2, 3, 10

**Statutes**

18 U.S.C. § 921(a)(20) .......... 8

18 U.S.C. § 922(g) .......... *passim*

18 U.S.C. § 922(g)(1) .......... 1, 7

18 U.S.C. § 922(q)(2)(A) (Supp. IV 1998) .......... 5

Gun Free School Zones Act .......... 5

Miss. Code Ann. § 97-37-5(3) .......... 8

Pub. L. 104-208, § 657, 110 Stat. 3009-370 (1996) .......... 5

Tex. Pen. Code § 46.04(a)(1) .......... 1, 9

Tex. Pen. Code § 46.04(a)(2) .......... 1

Tex. Pen. Code § 46.04(f) .......... 9

Tex. Pen. Code § 46.04(g) .......... 9

**Other Authorities**

Graham Ambrose, *Gunmaking at the Founding*, 77 Stan. L. Rev. 235, 248 & n.75 (2025) .......... 10

William J. Clinton, *Message to the Congress Transmitting Proposed Legislation To Amend the Gun-Free School Zones Act of 1990*, 1995 Pub. Papers 679 .......... 6

## Identity, Interest, and Authority to File

Amici Curiae are all criminal defendants who were prosecuted and convicted in the Northern District of Texas for possessing firearms inside their own homes:

- Dominic Reed is the Defendant-Appellant in Fifth Circuit Case 24-11085.
- David Gutierrez is the Defendant-Appellant in Fifth Circuit Case 25-10524.
- Fredrick Jarrell Penn, Jr., is the Defendant-Appellant in Fifth Circuit Case 26-10766.

Amici's interest in the outcome of this case is two-fold. First, a ruling in favor of Curtis Squire would strengthen or even vindicate Amici's appellate challenges to their own convictions under 18 U.S.C. § 922(g)(1). Second, a ruling curtailing the *federal* government's power to prosecute felons' non-commercial possession of firearms would open the door to eventual restoration of Amici's ability to keep a firearm within the home pursuant to Texas state law. *See* Tex. Pen. Code § 46.04(a)(1)–(2) (allowing former felons to possess firearms at the premises where they live starting five years after full satisfaction of any sentence).

This brief is filed along with Amici's unopposed motion for leave to participate as amici curiae in this case.

No party's counsel authored any part of this brief. No party's counsel contributed money intended to fund the brief. No one other than Amici's counsel contributed money intended to fund preparation or submission of this brief.

## Introduction and Summary of the Argument

Amici agree with Appellant: the "minimal nexus" holding in *Scarborough v. United States*, 431 U.S. 563, 575 (1977), should not govern this Court's *constitutional* interpretation of Congress's enumerated powers under the Commerce Clause,[1] nor should it govern this Court's *statutory* interpretation of the possession offense in the post-1986 version of 18 U.S.C. § 922(g). While those two inquiries are (or should be) distinct, this Court has treated them as coterminous since *United States v. Rawls*, 85 F.3d 240, 243 (5th Cir. 1996).

The distinction between constitutional interpretation and statutory interpretation is important, and Appellant makes strong arguments under both. *Scarborough* was a statutory interpretation decision, and it did not even purport to address constitutional concerns. And in 1986, Congress repealed the statute interpreted in *Scarborough* and created something new, now codified at 18 U.S.C. § 922(g). Under a plain-meaning analysis of the possession offense in 18 U.S.C. § 922(g), the *possession* of a firearm must have a *present* connection to commerce. *See* Squire Br. 39–46. Throughout that section, Congress carefully distinguished between relative clauses using perfect tense verbs (e.g., "who has been convicted"; "who has been adjudicated"; "which has been shipped") and relative clauses using present tense verbs ("who is a fugitive"; "who is

[1] U.S. Const., art. I, § 8.

an unlawful user"; "who is subject to a court order"). As such, *even if* Congress has the constitutional authority to regulate noncommercial possession based solely on prior movement, § 922(g)'s nexus element requires a present, ongoing connection between possession and commerce.

Those arguments are adequately covered in Appellant's brief and by other amici. Without shrinking from the argument that the inquiries are or should be separate, this brief describes *Rawls*'s consolidated statutory and constitutional holdings as the "Prevailing Interpretation" of the nexus element. Under the Prevailing Interpretation, if a firearm was manufactured outside of Texas, and was later found in Texas, then (a) any subsequent possession of that firearm—even years after the firearm left the stream of commerce—is possession "in or affecting commerce," and (b) the statutory ban on the firearm's possession is a constitutional exercise of Congress's powers under Article I, Section 8, of the Constitution.

The brief will first explain that the Prevailing Interpretation nationalizes control over firearms, at the expense of federalism and state's rights. Then, the brief will show that the Prevailing Interpretation is inconsistent with the original public meaning of the original, unamended Constitution.

## Argument

### I. The Prevailing Interpretation of Section 922(g)'s nexus-with-commerce element nationalizes control over firearms at the expense of federalism and states' rights.

#### A. The Prevailing Interpretation gives the national government complete and perpetual control over nearly every firearm made since 1898.

Congress's sole reason for requiring proof of a nexus or "jurisdictional" element within § 922(g) was to "ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *United States v. Lopez*, 514 U.S. 549, 561 (1995). But under the Prevailing Interpretation, that nexus element is effectively superfluous. Nearly every firearm in America has, at some point in the past, crossed a state or federal boundary.

The Prevailing Interpretation depends upon a "legal fiction":

> *Scarborough*'s legal fiction is that the transport of a weapon in interstate commerce, however remote in the distant past, gives its present intrastate possession sufficient interstate aspect to fall within the ambit of the statute. This fiction is indelible and lasts as long as the gun can shoot. Thus, a felon who has always kept his father's World War II trophy Luger in his bedroom has the weapon "in" commerce.

*United States v. Coward*, 151 F. Supp. 2d 544, 549 (E.D. Pa. 2001). For statutory purposes, a firearm's past movement across a state or international boundary means anything done with that firearm thereafter is constructively done "in commerce," even long after it has left commerce.

That fiction applies to nearly every firearm in America. Economies of scale and federal licensing rules serve as barriers to entry for would-be manufacturers, distributors, wholesalers, and retailers. Most firearms are manufactured either overseas or in a few scattered domestic locations. Only rarely will a firearm be assembled, distributed, sold, and possessed within the confines of a single state. Even then, the Prevailing Interpretation nationalizes control if a component (such as the frame or receiver) had previously moved across state lines. *See*, e.g., *United States v. Broadnax*, 601 F.3d 336, 341 (5th Cir. 2010). It may even include predecessor items *used* to make frames or receivers. *See generally Bondi v. VanDerStok*, 604 U.S. 458, 481 (2025) (construing the statutory definition of "firearm" to include items that were not yet frames nor receivers).

For years, it has been an open secret that the Prevailing Interpretation's "minimal" nexus is, effectively, no nexus at all. After *Lopez*, Congress amended the Gun Free School Zones Act to require proof of "a firearm *that has moved in or that otherwise affects interstate or foreign commerce*." 18 U.S.C. § 922(q)(2)(A) (Supp. IV 1998) (emphasis added); *see* Pub. L. 104-208, § 657, 110 Stat. 3009-370 (1996). Unlike § 922(g), the amended version of (q) explicitly adopts the past-movement formulation. That language was suggested by President Clinton (and Attorney General Reno) in a May 1995 proposal to Congress:

> The Attorney General reported to me that this proposal would have little, if any, impact on the ability of prosecutors to charge

> this offense, for the vast majority of firearms have "moved in … commerce" before reaching their eventual possessor.

William J. Clinton, *Message to the Congress Transmitting Proposed Legislation To Amend the Gun-Free School Zones Act of 1990*, 1995 Pub. Papers 678 (May 10, 1995).

The point of this discussion has been to make explicit what everyone who practices in this area knows to be true: if (as the Prevailing Interpretation holds) Congress has the power to say who can and who cannot possess any firearm that ever moved across a border (and if Congress has in fact exercised that power in § 922(g)), then Congress has nationalized control over "all" firearms in America. In that sentence, "all" is in quotations only because there are trivial exceptions to the otherwise universal fact of past-movement, and because it is unclear whether even those weapons' possession might be deemed to "affect" commerce through some other imagined fiction. That was certainly the Clinton Administration's view of federal authority involving guns:

> Furthermore, by also including the possibility of proving the offense by showing that the possession of the firearm "otherwise affects interstate or foreign commerce," this proposal would leave open the possibility of showing, under the facts of a particular case, that although the firearm itself may not have "moved in … interstate or foreign commerce," its possession nonetheless has a sufficient nexus to commerce.

Clinton, *supra,* 1995 Pub. Papers 678.

In other words, the Prevailing Interpretation assumes and holds that a firearm's past movement provides the federal government with the power to exercise plenary

and perpetual control over who may, and who may not, possess that weapon. If that is correct, then we should call it what it is: plenary and perpetual federal police power over firearms, full stop. But there is then no principled reason to hold otherwise for *any* durable good created in the market economy. Whether Congress chooses to regulate or prohibit noncommercial conduct involving those durable goods is strictly a matter of politics and preference. "Under our written Constitution, however, the limitation of congressional authority is not solely a matter of legislative grace." *United States v. Morrison*, 529 U.S. 598, 616 (2000).

### B. The federal government has used the police power provided by the Prevailing Interpretation in a way that directly contradicts and neutralizes the prerogatives and policies adopted by state governments.

When it comes to felons and firearms, the conflicts between state and federal policy choices are real, direct, and substantial. The federal prohibition is broad, blunt, and persistent. Unlike Congress, state legislatures are ready, willing, and able to tailor their firearm laws to local mores, local conditions, and the unique aspects of local criminal proceedings. The Prevailing Interpretation means the federal rules control, even with noncommercial activity inside the home. But the prevention and "suppression" of violent crime "has always been the prime object of the States' police power." *Morrison*, 529 U.S. at 615.

All three states that constitute the Fifth Circuit have exercised their police power to regulate former felons and firearms. And all three have decided that *some* of the people who are covered by § 922(g)(1) can and should be allowed to keep guns

within their own homes. Mississippi allows former felons who have "led a useful, productive and law-abiding life" to obtain a "certificate of rehabilitation" from the court of conviction. *See* Miss. Code Ann. § 97-37-5(3). Under federal law, that certificate means nothing. If the conviction remains in place,[2] then the full weight of the federal government can be deployed against that rehabilitated person if he engages in conduct explicitly allowed by the judge's restoration order and state law.

Louisiana goes further. Many felons regain the right to possess and carry firearms as soon as they complete their sentence, even if other civil disabilities remain in place. *State v. Williams*, 366 So. 2d 1369, 1375 (La. 1978), *abrogated on other grounds by State v. Landry*, 588 So. 2d 345, 347 n.6 (La. 1991). The state bans gun possession only if the defendant was convicted of a specified crime, and even that ban expires after a ten year "cleansing period." *State v. Eberhardt*, 145 So. 3d 377, 385 n.6 (La. 2014). In Amicus Dominic Reed's case, the Court is considering the relationship between Louisiana's rights-restoration laws and 18 U.S.C. § 921(a)(20). But everyone agrees that Louisiana broadly restores the right to keep and carry a firearm, and everyone agrees that at least some of those people remain under the federal disability.

[2] Congress has created some exceptions to 18 U.S.C. § 922(g)'s coverage for defendants whose convictions are set aside, or whose civil rights have been restored. *See generally* 18 U.S.C. § 921(a)(20). Federal courts construe those exceptions very narrowly. *See, e.g.*, *Logan v. United States*, 552 U.S. 23, 37 (2007) (If a defendant never lost his civil rights, his civil rights have not been "restored."); *Caron v. United States*, 524 U.S. 308, 311 (1998) (even after full restoration of civil rights, if state law allows possession of long guns (anywhere) and handguns (inside the home), but forbids possession of handguns outside the home or business, then § 922(g) completely bans *all* firearm possession at any of those places).

In Texas, state law allows firearm possession by someone convicted of another jurisdiction's felony if there is no corresponding Texas felony. Tex. Pen. Code § 46.04(f), (g). More importantly, Texas completely restores the right to keep firearms at home five years after completion of confinement or community supervision. Tex. Pen. Code § 46.04(a)(1). Once again, the federal law ignores that choice and completely bans those same people from doing what state law allows.

Section 922(g) is a blunt instrument. By extending the statute's reach to noncommercial possession inside the home, the Prevailing Interpretation negates and nullifies the state's decisions at the core of their traditional police powers.

## II. The Prevailing Interpretation is inconsistent with the original public meaning of the unamended Constitution.

For some modern phenomena—like air travel or wire transfers—faithful application of the original public meaning of the Constitution requires heavy reliance on analogies and abstractions. *See*, e.g., *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008) (recognizing that "the First Amendment protects modern forms of communications," the Second Amendment protects "all instruments that constitute bearable arms," and the Fourth Amendment "applies to modern forms of search").

Many in the founding generation believed the first ten amendments were "unnecessary" because "the rights in question are reserved by the manner in which the federal powers are granted." Letter from James Madison to Thomas Jefferson (Oct. 17, 1788), reprinted in 5 Writings of James Madison 269, 271 (G. Hunt ed. 1904). The

ratification debates specifically discussed Congress's authority to dictate who may and who may not possess firearms. The advocates of the unamended Constitution were unanimous in arguing that the Constitution *did not convey* that power to the new national government. *Heller*, 554 U.S. at 599 (citing The Origin of the Second Amendment 38, 40, 275, 276, 280, 281 (D. Young ed., 2d ed.2001)).

Then, as now, the "vast majority of firearms and firearms parts" had been transported across a political boundary before reaching the eventual possessor. Graham Ambrose, *Gunmaking at the Founding*, 77 Stan. L. Rev. 235, 248 & n.75 (2025). Europe "suppl[ied] the colonists with most of the guns used in" the Revolutionary War. *Id.* at 254–56 & nn.115–129. In the early years of the Republic, domestic manufacturing capacity grew largely because of industrialization, "economies of scale[,] and the centralization of weapons production." *Id.* at 258 n.143.

If the Prevailing Interpretation of § 922(g)'s nexus element were consistent with the original public meaning of the unamended Constitution, then the advocates of a stronger national government would have conceded that the Commerce Clause would give Congress power over privately possessed firearms. The opposite is true: they all agreed that nothing in the new Constitution would grant that power to Congress.

## Conclusion

The Court should reject the Prevailing Interpretation of § 922(g)'s nexus element, as a matter of both constitutional and statutory interpretation.

Respectfully submitted,

Jason D. Hawkins
Federal Public Defender for the
Northern District of Texas

*/s/ J. Matthew Wright*
Assistant Federal Public Defender
Texas Bar No. 24058188
600 South Tyler Street
Suite 2300
Amarillo, Texas 79101
(806) 324-2370
Matthew_Wright@fd.org

*Attorneys for Amici Curiae*

## Certificate of Service

I filed this brief via the Court's ECF system as an exhibit to the motion for leave on September 10, 2026. All parties' counsel are registered filers, and are deemed served.

/s/ J. Matthew Wright

## Certificate of Compliance

1. This document complies with the type-volume limit of Fed. R. App. P. 29)(a)(5 because the document contains 2,453 words, excluding exempted portions.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style font. Footnotes are in 12-point font.

/s/ J. Matthew Wright